MAXWELL, J.,
for the Court:
¶ 1. In this consolidated appeal, we consider the enforceability of two arbitration provisions entered into by customers of Zippy Check Advance, a delayed-deposit check-cashing business, who are suing Zippy Check for a variety of claims, including fraudulent misrepresentation and breach of the covenant of good faith and fair dealing. Each of the thirty-two plaintiffs’ transactions with Zippy Check were governed by one of two delayed-deposit agreements containing similar information about the lending transaction but differing arbitration provisions. On appeal, Zippy Check insists the circuit judges incorrectly found the arbitration provisions were procedurally and substantively unconscionable, and argues the judges erred by denying its motions to compel arbitration.
¶ 2. After review, we agree that the first agreement — a one page, front and back, delayed-deposit agreement, containing an arbitration provision, which was intermingled with other non-distinguishable provisions and was typed in finer print than the terms on the front page — was procedurally unconscionable. Thus, we affirm the denial of arbitration on the claims of the eight plaintiffs who entered into this agreement and remand their cases for trial.
¶ 3. However, we find the second agreement’s arbitration clause — which was signed by the remaining twenty-four plaintiffs, consisted of the front side of one page, specifically highlighting the arbitration provision in capital letters and bolded text, and provided a more detailed statement about arbitration than the first agreement — was neither procedurally nor substantively unconscionable. We therefore reverse the denial of arbitration on the claims stemming from the second agreement and compel arbitration of these claims.
Facts and Procedural History
¶ 4. Caplin Enterprises, Inc. and Check Cashers & More, Inc. operate Zippy Check, a licensed check-cashing business in Quitman, Mississippi. Zippy Check engages in what is known as delayed-deposit check cashing, which is governed by the Mississippi Check Cashers Act. Miss.Code Ann. §§ 75-67-501-539 (Rev.2009 & Supp. 2012). This practice encompasses accepting personal checks from its customers for up to $500[1] plus a fee, which may not exceed a certain percentage of the check’s face value.[2] Typically, when a customer writes a check to Zippy Check, Zippy Check gives the customer cash equal to the face value of the check, less the particular fee authorized by statute. Zippy Check then agrees to delay the deposit of the check until an agreed future date, usually the customer’s next payday. See Miss.Code Ann. § 75-67-519(1) (Supp. 2012). The customer contracts to repurchase the check for its face value by this date, or Zippy Check will present the check for deposit to the customer’s bank.
¶ 5. The various check cashing transactions at issue took place in Clarke County and Newton County, Mississippi. In Clark County, Denise Arrington and nineteen other named plaintiffs contracted with Zippy Check for cash-advance services. And *679 Jerald Ainsworth and eleven other named plaintiffs did the same in Newton County. Both sets of plaintiffs signed one of two specific delayed-deposit agreements with Zippy Check.
¶ 6. The first version of the agreement was signed by eight of the thirty-two plaintiffs. It is one page, front and back, with a variety of font sizes, and is the older of the two agreements, last revised on April 12, 2001. The remaining twenty-four plaintiffs signed the second agreement, which appears to have been created on May 31, 2005. The entire second agreement is contained on one side of a single page. And apart from the transactional terms listed at the top of the page and the eight bolded headings, the text of the agreement is essentially uniform in both size and style. Each agreement also contains an arbitration provision. But the wording and style of the provisions differ quite a bit.
¶ 7. The plaintiffs filed separate lawsuits, one in Clarke County Circuit Court, the other in Newton County Circuit Court. They claimed Zippy Check had fraudulently represented the terms of its service charges and fees and exhibited a pattern of “predatory lending,” trapping the plaintiffs in a never ending cycle of debt repayment. While the individual plaintiffs differed in each case, both suits alleged Zippy Check had (1) breached the covenant of good faith and fair dealing; (2) negligently handled the plaintiffs’ accounts; (3) caused the plaintiffs to suffer emotional distress and mental anguish, (4) negligently hired, trained, and supervised its employees; and (5) fraudulently misrepresented the terms of the service charges and fees.
¶ 8. Citing the arbitration provisions in the two delayed-deposit agreements, Zippy Check filed a motion to compel arbitration in each case. But the Clarke County Circuit Court entered a written order denying Zippy Check’s motion to compel, finding the two arbitration provisions procedurally and substantively unconscionable. The Newton County Circuit Court followed suit and also denied arbitration. The Newton County Circuit Court opted not to issue separate written findings, but instead, as Judge Cotten put it, “piggy-back[ed],” the Clarke County Circuit Court’s specific reasoning for denying arbitration. Zippy Check appealed the denial of arbitration in both cases, and we consolidated the two cases on appeal.
Standard of Review
¶ 9. An order granting or denying a motion to compel arbitration is treated as a final judgment for appellate purposes, and an appeal may be taken from it. Tupelo Auto Sales, Ltd. v. Scott, 844 So.2d 1167, 1170 (¶ 10) (Miss.2003). Because the grant or denial of a motion to compel arbitration raises an issue of law, our review is de novo. East Ford, Inc. v. Taylor, 826 So.2d 709, 713 (¶ 9) (Miss.2002) (citing Webb v. Investacorp, Inc., 89 F.3d 252, 256 (5th Cir.1996)). According to the Federal Arbitration Act, “arbitration agreements ‘shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.’ ” Norwest Fin. Miss., Inc. v. McDonald, 905 So.2d 1187, 1192 (¶ 7) (Miss.2005) (quoting 9 U.S.C. § 2 (2006)). “Doubts as to the availability of arbitration must be resolved in favor of arbitration.” IP Timberlands Operating Co. v. Denmiss Corp., 726 So.2d 96, 107 (¶ 46) (Miss.1998) (citations omitted).
Discussion
I. Applicability of the Federal Arbitration Act
¶ 10. Because the plaintiffs challenge the applicability of the Federal Arbitration Act (“FAA”), we must first determine if the FAA applies to the arbitration *680 provisions in the delayed-deposit agreements at issue.
¶ 11. The FAA governs the arbitrability of contracts “evidencing a transaction involving commerce[.]” 9 U.S.C. § 2. And Mississippi “has endorsed the undisputed province of the [FAA],” recognizing that it controls those “agreements formed in interstate commerce wherein a contractual provision provides for alternative dispute resolution.” EquiFirst Corp. v. Jackson, 920 So.2d 458, 462 (¶ 11) (Miss.2006) (citing IP Timberlands, 726 So.2d at 107 (¶ 45)). Concerning the applicability of the FAA to these particular contracts, our threshold determination is whether the delayed-deposit agreements between Zippy Check and the plaintiffs “involv[e] commerce” and thus fall within section 2 of the FAA. 9 U.S.C. § 2; IP Timberlands, 726 So.2d at 107 (¶ 45) (“The sine qua non of the FAA’s applicability to a particular dispute is an agreement to arbitrate the dispute in a contract which evidences a transaction in interstate commerce.” (quoting Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co., 867 F.2d 809, 813 n. 4 (4th Cir.1989))).
¶ 12. Here, the plaintiffs argue the circuit court incorrectly found the FAA applied to what they deem are wholly intrastate contracts. As they see it, because all parties are Mississippi residents, the delayed-deposit agreements are not contracts “evidencing a transaction involving commerce.” We disagree.
¶ 13. While for the FAA to apply there must be some involvement with commerce, it need not be substantial in each particular transaction. The United States Supreme Court has interpreted the phrase “involving commerce” within section 2 as the “functional equivalent” of “affecting commerce.” Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56, 123 S.Ct. 2037, 156 L.Ed.2d 46 (2003) (citing Allied-Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 273-74, 115 S.Ct. 834,130 L.Ed.2d 753 (1995)). And the requisite nexus for FAA governance of a contract’s arbitrability is met “if in the aggregate the economic activity in question would represent a general practice subject to federal control.” Id. at 56-57, 123 S.Ct. 2037 (citations omitted and internal quotation marks omitted); see also Lewis v. BT Inv. Managers, Inc., 447 U.S. 27, 38-39, 100 S.Ct. 2009, 64 L.Ed.2d 702 (1980) (“[Blanking and related financial activities are of profound local concern.... Nonetheless, it does not follow that these same activities lack importance interstate attributes.”). Thus, for purposes of application of the FAA, when assessing whether the contract involves commerce, only the “general practice need bear on interstate commerce in a substantial way.” Citizens Bank, 539 U.S. at 57, 123 S.Ct. 2037.
¶ 14. Specifically in the context of payday-loan contracts between licensed check cashers and their customers, the Mississippi Supreme Court has previously found a sufficient nexus to interstate commerce, based in part, on the transactions being subject to the Truth-in-Lending Act, 15 U.S.C. §§ 1601-1693 (2006). See Speedee Cash of Miss., Inc. v. Williams, 915 So.2d 1061, 1062-63 (¶ 3) (Miss.2005). Of the two contracts at issue here, the second delayed-deposit agreement cites the FAA and notes that certain disclosures are made in accordance with the Truth-in-Lending Act. Though the first agreement lacks a similar expression, it in fact discloses the same information as the second. Still, regardless of whether the particular federal protective regulations were cited, because Zippy Check — a lender of money to consumers — must operate in accordance with the Truth-in-Lending Act, its lending activities involve commerce. See id. (noting “[i]t is elementary to find that the contract affects interstate commerce inas *681 much as Speedee Cash, a lender of money to consumers, must run its business in accordance with federal rules and regulations” (citation omitted)).
¶ 15. When viewed in the aggregate, we find it clear that the general check-cashing services performed by Zippy Check affect interstate commerce. Thus, the circuit judges correctly held that the FAA applied to both arbitration provisions.
II. External Legal Constraints
¶ 16. Having found the FAA applies, we next decide if the motion to compel arbitration was properly denied as substantively and procedurally unconscionable.
¶ 17. Our review begins with a two-pronged inquiry focusing on the specific arbitration agreements and whether legal constraints external to the agreements bar arbitration. Under the first prong, there are two considerations — “(1) whether there is a valid arbitration agreement and (2) whether the parties’ dispute is within the scope of the arbitration agreement.” Taylor, 826 So.2d at 713 (¶ 9). Under the second prong, we decide “whether legal constraints external to the parties’ agreement foreclose[] arbitration of the claims.” Id. at 713 (¶ 10) (citation omitted). To evaluate if such legal constraints exist, “courts generally should apply ordinary state-law principles that govern the formation of contracts.” Id. at 713-14 (¶ 12) (quoting Bank One, N.A. v. Coates, 125 F.Supp.2d 819, 827 (S.D.Miss.2001)).
¶ 18. We agree with the circuit judges that the disputes are within the scope of the arbitration agreements. But while the circuit judges found the provisions substantively and procedural unconscionable under the first prong, we find it more appropriate to address these state-law based external legal constraints, which, if applicable, preclude arbitrability under the second prong. See id. at 713 (¶ 10) (“Under the second prong, applicable contract defenses available under state contract law such as fraud, duress, and unconscionability may be asserted to invalidate the arbitration agreement without offending the[FAA].” (emphasis added)).
Unconscionability
¶ 19. “Unconscionability has been defined as ‘an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party.’ ” Entergy Miss., Inc. v. Burdette Gin Co., 726 So.2d 1202, 1207 (¶ 11) (Miss.1998) (quoting Bank of Ind., Nat’l Ass’n v. Holyfield, 476 F.Supp. 104, 109 (S.D.Miss.1979)). There are two recognized types of unconscionability — “procedural and substantive.” Taylor, 826 So.2d at 714 (¶ 13) (quoting Pridgen v. Green Tree Fin. Servicing Corp., 88 F.Supp.2d 655, 657 (S.D.Miss.2000)). Here, the circuit judges found the two arbitration provisions were both procedurally and substantively unconscionable.

Procedural and Substantive Unconscionability

¶ 20. In reviewing these findings, we point out the differences between procedural and substantive unconscionability. “Procedural unconscionability may be proved by showing ‘a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms.’ ” Taylor, 826 So.2d at 714 (¶ 13) (quoting Pridgen, 88 F.Supp.2d at 657). Procedural uncon-scionability “is most strongly shown in contracts of adhesion presented to a party on a ‘take it or leave it basis.’ ” Id. at 716 *682 (¶ 19) (quoting Entergy Miss., 726 So.2d at 1208 (¶ 15)).
¶ 21. Substantive uneonscionability, on the other hand, “may be found when the terms of the contract are of such an oppressive character as to be unconscionable.” Russell v. Performance Toyota, Inc., 826 So.2d 719, 725 (¶ 25) (Miss.2002). “[SJubstantive unconscionability is present when there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party’s nonperformance or breach.” Cleveland v. Mann, 942 So.2d 108, 117 (¶ 29) (Miss.2006) (citation omitted).
III. The First Agreement
¶22. The first delayed-deposit agreement was signed by eight of the thirty-two plaintiffs. It is one page, front and back, and is entitled “Agreement.” The front page lists the basic terms of the contract, including the annual percentage rate, finance charge, amount financed, and total amount owed. The front of the page also provides signature lines for the customer and Zippy Check employee to sign, acknowledging their acceptance of the agreement’s terms. The back of the page lists additional terms, including the arbitration provision. These additional terms are in paragraph form, but there are no separate headings, no bolded words, no capitalized words, and no distinguishable provisions. And the print used on the back page is smaller than on the front. The arbitration clause, which is found in the fifth of these nine nondescript, small-print, back-page paragraphs, states:
Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association (“AAA”) and judgment on the award rendered by the arbitration may be entered in any court having jurisdiction thereof.
¶ 28. The Clarke County circuit judge noted the arbitration clause was intermingled with other non-distinguishable provisions and that it did “not even distinguish the paragraph with the arbitration language[ ] as an ‘Arbitration Provision.’ ” And, “[t]here is nothing in that first contract which would draw the readers’ attention to the arbitration language, nor is the paragraph highlighted from the rest of the text.” (Internal quotation marks omitted). Furthermore, the Clark County circuit judge labeled the agreement one of “adhesion” because Zippy Check had offered it to the plaintiffs on a “take-it-or-leave-it” basis with no real opportunity to bargain about its terms. Based on these considerations, both judges found the first arbitration provision was procedurally unconscionable.
A. Contract of Adhesion
¶ 24. We first consider whether the contract was one of adhesion. A contract of adhesion is an agreement “drafted unilaterally by the dominant party and then presented on a ‘take-it-or-leave-it’ basis to the weaker party[,] who has no real opportunity to bargain about its terms. Such contracts are usually prepared in printed form, and frequently at least some of their provisions are in extremely small print.” Taylor, 826 So.2d at 716 (¶ 20) (quoting Holyfield, 476 F.Supp. at 108).
¶ 25. We find the circuit judges were correct that the agreements’ terms (in both the first and second agreement) appear to be non-negotiable. Shawana Sum-rail, Zippy Check’s Clarke County location manager, gave deposition testimony about the “take-it-or-leave-it” nature of the agreements:
Q: Well, let me ask you, had [the plaintiffs] wanted to exclude the arbitra *683 tion provision or any other provision in [the agreement]; was it, you have to sign it as is or we can’t do business? They had to sign before you [could] give them the money[,] right?
A: Right.
Q: If they didn’t want to sign, would you give them the money?
A: I don’t think I could give them the money.
While Sumrall only testified about the Clarke County store, both contracts are pre-printed forms, and there was no record evidence contradicting her testimony or indicating a different negotiable practice had been utilized at Zippy Check’s Newton County location.
¶ 26. Based on our de novo review, we find the pre-printed delayed-deposit agreements appear to be contracts of adhesion. But we are mindful that “contracts of adhesion[ ] are not automatically void.” Taylor, 826 So.2d at 716 (¶ 20) (quoting Hughes Training, Inc. v. Cook, 254 F.3d 588, 593 (5th Cir.2001)). And the same is true of arbitration agreements. Id. (“[Arbitration agreements are not inherently unconscionable.” (citing Coates, 125 F.Supp.2d at 830)). Rather, an arbitration provision within “a contract of adhesion renders the agreement procedurally unconscionable only where the stronger party’s terms are unnegotiable and ‘the weaker party is prevented by market factors, timing[J or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all.’ ” Id. (emphasis added) (quoting Entergy Miss., 726 So.2d at 1207 (¶ 12)).
¶ 27. Though the terms appear nonnegotiable, there is no record evidence that market factors, timing, or other pressures prevented the plaintiffs, in either county, from contracting with another party on more favorable terms or refraining from contracting at all. Lacking such evidence, we cannot find the plaintiffs were not free to employ the services of another check-cashing business had they found the terms of Zippy Check’s agreements unsatisfactory. So while not dispositive of the invalidity of the agreements, the fact that the agreements appear to be adhesion contracts may be considered in combination with other potential indicators of procedural unconscionability.
B. Use of Inconspicuous Print
¶28. Looking next to details of the first agreement’s text, we immediately notice the arbitration provision appears in much smaller print than many of the agreement’s other terms, including the transactional details on the first page. The use of finer print in an arbitration provision has also been deemed an indicator of procedural unconscionability. See Entergy Miss., Inc. 726 So.2d at 1207 (¶ 12) (citing Holyfield, 476 F.Supp. at 109-10). Indeed, our supreme court has found an arbitration clause containing “inconspicuous print” to be procedurally unconscionable. Taylor, 826 So.2d at 716-17 (¶¶ 21-22). Furthermore, the first agreement’s arbitration provision, which contains no number or heading, is found wedged in the midst of other non-distinguishable, non-labeled provisions on the back page of the agreement, all of which are typed in much smaller font than the terms on the first page.
¶ 29. Based on these combined factors, we agree with both circuit judges that the first arbitration provision is procedurally unconscionable. In light of our holding, we need not consider whether the first agreement is also substantively unconscionable. We remand for trial the claims of the eight plaintiffs who signed this version of the agreement.
*684 IV. The Second Agreement
¶ 30. The circuit judges also found the second delayed-deposit agreement’s arbitration provision both procedurally and substantively unconscionable. As a result, both courts likewise denied arbitration on claims stemming from this variation of the agreements. But upon review, we find the second agreement’s arbitration clause neither procedurally unconscionable, nor oppressive or impermissibly one-sided. Thus, we reverse the denial of Zippy Check’s request for arbitration of the claims stemming from the second delayed-deposit agreement and compel arbitration on these claims.
A. The Text of the Second Arbitration Provision
¶ 31. The second delayed-deposit agreement was the version signed by the majority of the plaintiffs. Like the first agreement, it is a form contract. However, while it is a pre-printed form, the second agreement is a more concise recitation of the parties’ rights and obligations. It consists of only one side of a single page, with the financial charges and payment information listed at the top of the page. These transactional terms are followed by eight bolded headings, all of which are capitalized and set out in larger type than the bulk of the agreement’s other text. The sixth of these bolded headings is labeled “ARBITRATION PROVISION,” and states:
Any and all disputes or disagreements between the parties arising out of this agreement or any prior agreement between them (except the Lender’s rights to enforce the Borrower[’s] payment obligations in the event of default by judicial or other process) shall be resolved, upon the election of you or us, by binding arbitration and in accordance with rules of the American Arbitration Association as presently published and existing. The parties agree to be bound by the decision of the arbitrator(s). The arbitration proceeding shall be a condition precedent to any court proceeding. Notwithstanding the applicability of any other law to any other provision of this Agreement, the Federal Arbitration Act, 9 U.S.C. [§ ] 10[,] shall control the construction, interpretation, and application of the paragraph. Any issue as to whether the Agreement is subject to arbitration shall be determined by the arbitrator.
The agreement also includes a separate italicized paragraph, which emphasizes: “By signing this agreement, you acknowledge that you have read, understand,, and agree to all of [the] terms and conditions of the agreement, including the arbitration provision.”
B. Procedural Unconscionability

1. Contract of Adhesion

¶ 32. Similar to their findings on the first agreement, both circuit judges also found the second contract was one of adhesion and procedurally unconscionable. But again, the fact that a contract of adhesion contains an arbitration provision does not itself render the agreement procedurally unconscionable. Without record evidence that “market factors, timing, or other pressures” prevented these plaintiffs from being able to contract with other like businesses “on more favorable terms or to refrain from contracting at all,” we cannot find the contract presumptively void. See Entergy Miss., 726 So.2d at 1207 (¶ 12) (quoting Holyfield, 476 F.Supp. at 109-10). Thus, we must review the courts’ other findings.

2. Singling Out the Arbitration Provision

¶ 33. The circuit judges took issue with the second agreement’s failure to “alert *685 the reader to the importance of the terms of the arbitration language[.]” However, Mississippi law does not render an arbitration provision unenforceable if its “importance” is not singled out, or given special notice in the contract. Indeed, if Mississippi did mandate specific enhanced notice of arbitration clauses, it would directly conflict with the FAA.
¶ 34. The United States Supreme Court has been rather clear that “[s]tates may regulate contracts, including arbitration clauses, under general contract law principles[,] and they may invalidate an arbitration clause ‘upon such grounds as exist at law or in equity for the revocation of any contract.’ ” Doctor’s Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (quoting Dobson, 513 U.S. at 281, 115 S.Ct. 834). But by enacting section 2 of the FAA, “Congress precluded [s]tates from singling out arbitration provisions for suspect status, requiring instead that such provisions be placed ‘upon the same footing as other contracts.’ ” Id. (quoting Scherk v. Alberto-Culver Co., 417 U.S. 506, 511, 94 S.Ct. 2449, 41 L.Ed.2d 270 (1974)).
¶ 35. So requiring enhanced notice of the “importance” of an arbitration clause was neither required of Zippy Cheek nor even permissible under the FAA. See id. at 688 (finding the FAA displaced a Montana law rendering arbitration clauses unenforceable unless notice that the contract is subject to arbitration is typed in underlined capital letters on the first page of contract). Thus, we find Zippy Check’s failure to specifically highlight the “importance” of the arbitration clause does not render the arbitration provision unconscionable.

3. Use of Lender and Borrower in Arbitration Provision

¶ 36. The circuit judges’ findings of the procedural unconscionability of the second agreement were also influenced by the differing terms used in the arbitration clause. As the Clarke County judge noted, “[t]he provision identifies the parties as ‘Lender’ and ‘Borrower’ while all other provisions and terms of the contract refer to ‘Licensee’ and ‘Customer!)]’ ” Though the judge correctly noted that the Mississippi Check Cashers Act refers to check cashers as “Licensees,” not “Lenders,” we do not find Zippy Check’s different labeling of the parties makes the provision unconscionable.
¶ 37. First, and perhaps foremost, the terms “Lender and Borrower” are by no means complex. Second, there is no evidence that any of the plaintiffs were confused by the differing terms. And third, the arbitration clause clearly states that the parties agree to arbitrate any and all disputes arising out of, or in any way related to, their agreement. When considered against the backdrop of the acknowledgment advising each customer that “[b]y signing this agreement you acknowledge that you have read, understand, and agree to ... the arbitration provision ...,” we find nothing to show the use of the slightly different terms rendered the second arbitration provision procedurally unconscionable.
C. Substantive Unconscionability of the Second Arbitration Provision
¶ 38. In addition to their findings of procedural unconscionability, the circuit judges also found the second arbitration provision substantively unconscionable. Their prominent reason for doing so was that the arbitration clause “reserved [Zippy Check] a greater right or privilege to enforce the payment obligation, in the event of default by the Customer, by judicial or other process.” But it is now well-settled Mississippi law that “mutuality of obligation is not required for an arbitration *686 agreement to be enforceable as long as there is consideration.” McKenzie Check Advance of Miss. v. Hardy, 866 So.2d 446, 453 (¶ 23) (Miss.2004); see also Sawyers v. Herrin-Gear Chevrolet Co., 26 So.3d 1026, 1035 (¶ 22) (Miss.2010) (citing Hardy and recognizing mutuality of obligation is not required for arbitration agreement to be enforceable).
¶ 39. To find mutuality of obligation is not required to enforce arbitration clauses, the Hardy court drew from several federal district court decisions, the most instructive of which is perhaps Pridgen, 88 F.Supp.2d 655.[3] In that case, Judge Barbour reviewed what he deemed a “clearly one-sided” arbitration provision, ultimately finding it enforceable because consideration was present. Id. at 658. Pridgen involved a borrower who had defaulted on a loan and later argued the installment contract’s arbitration provision was substantively unconscionable because it reserved the lender’s assignee the right to seek judicial remedies on certain actions, while at the same time preserving the lender’s assignee the right to compel arbitration as to any other claim. Id. Essentially, the lender’s assignee “had an option of whether to sue in court, especially with certain types of claims, or to submit a claim to arbitration.” Id. But the borrower was bound to arbitrate any claim based on the contract. Id.
¶ 40. Though the arbitration provision favored the lender’s assignee, Judge Barbour found that Mississippi law did not render the arbitration clause unenforceable merely because it was one-sided.[4] Our supreme court in Hardy drew from this reasoning, establishing that under Mississippi law, “mutuality of obligation is not required for an arbitration agreement to be enforceable as long as there is consideration.” Hardy, 866 So.2d at 453 (¶ 23).
¶ 41. Here, the second arbitration provision permitted either the borrower or Zippy Check to require arbitration for disputes arising from the second delayed-deposit agreement. The lone exception was Zippy Check’s reservation of the right, upon default, to enforce a customer’s payment obligations through the judicial process. While this exception granted Zippy Check an option not available to the plaintiffs, we find that because consideration was obviously present, mutuality of obligation was not required. Thus, we find the exception permitting Zippy Check to collect from a customer through the judicial process is insufficient to render the second arbitration clause substantively unconscionable.
Conclusion
¶ 42. Because we find the first arbitration provision proeedurally unconscionable, we affirm the circuit courts’ judgments denying Zippy Check’s motions to compel arbitration with respect to the eight plaintiffs who signed the first agreement. But as to the remaining twenty-four plaintiffs, we reverse the judgments of the circuit courts and remand with instructions to *687 stay the proceedings and refer the claims contained in the complaints to arbitration.
¶ 43. THE JUDGMENTS OF THE CLARICE COUNTY CIRCUIT COURT AND THE NEWTON COUNTY CIRCUIT COURT ARE AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL ARE ASSESSED EQUALLY BETWEEN THE APPELLANTS AND APPELLEES.
LEE, C.J., IRVING AND GRIFFIS, PJJ., BARNES, ISHEE, ROBERTS, FAIR AND JAMES, JJ., CONCUR. CARLTON, J., CONCURS IN RESULT ONLY WITHOUT SEPARATE WRITTEN OPINION.

. The Mississippi State Legislature raised this amount from $400 to $500, effective January 1, 2012. See Miss.Code Ann. § 75-67-519 (Supp.2012) and Amendment Notes.

. See Miss.Code Ann. § 75 — 67—519(2)—(4). For cashing a delayed-deposit check less than $250, the fees are capped at $20 per $100 advanced. Miss.Code Ann. § 75-67-519(4)(a). The cap then increases to $21.95 per $100 advanced for cashing a delayed-deposit check over $250. Miss.Code Ann. § 75-67-519(4)(b). These fees are considered one-time service fees rather than interest. Miss.Code Ann. § 75-67-515(4) (Supp.2012).

. The Hardy court also discussed First Family Financial Services, Inc. v. Fairley, 173 F.Supp.2d 565 (S.D.Miss.2001) and Murphy v. AmSouth Bank, 269 F.Supp.2d 749 (S.D.Miss.2003).

. Pridgen, 88 F.Supp.2d at 658-59. Other federal court reviewing similar challenges to arbitration provisions have reached the same conclusion. See Doctor's Assocs., Inc. v. Distajo, 66 F.3d 438, 451-53 (2d Cir.1995) (holding that mutuality of obligation is not required to enforce an arbitration agreement if the underlying contract is supported by consideration); Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp., 878 F.2d 167, 168-69 (6th Cir.1989) (rejecting claim that an arbitration clause is an independent contract that requires separate consideration to be enforceable).