COLEMAN, Justice,
dissenting:
¶ 22. Applying the two-pronged inquiry for determining whether arbitration should be enforced, under the Court’s policy favoring arbitration, I would hold that the arbitration provisions in both contracts are valid and enforceable. Therefore, I respectfully dissent.
¶ 23. The Court of Appeals held that the more extensive arbitration provision in the newer contract was sufficient and that arbitration should be enforced as to the twenty-four plaintiffs who signed that contract. Caplin Enters., Inc. v. Arrington, 2011-CA-01832-COA, 145 So.3d 675, 685-87, 2013 WL 1878879, **9-10 (¶¶ 41-42) (Miss.Ct.App. May 7, 2013). Because I agree with the Court of Appeals about the arbitration clause in the newer contract, and because the parties did not seek review of that decision, my discussion is limited to the older version of the contract.
¶ 24. Mississippi follows the federal policy favoring arbitration, and “any doubts concerning the scope of arbitrable issues *618 should be resolved in favor of arbitration.” Sawyers v. Herrin-Gear Chevrolet Co., Inc., 26 So.3d 1026, 1034 (¶ 20) (Miss.2010) (quoting Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)). As the majority explained, we apply a two-pronged test to determine whether arbitration should be enforced. I agree with the majority that the Zippy Check agreements were valid contracts and the claims are within the scope of the arbitration agreements. Thus, the parties agreed to arbitrate the dispute, and the first prong of the test is satisfied. I disagree with the majority, however, as to the second prong — whether legal constraints external to the parties’ agreement foreclosed arbitration.
¶ 25. As the majority stated, uncon-scionability is the only defense at issue. “Unconscionability has been defined as ‘an absence of meaningful choice on the part of one of the parties, together with contract terms [that] are unreasonably favorable to the other party.’ ” East Ford, Inc. v. Taylor, 826 So.2d 709, 715 (¶ 17) (Miss.2002) (quoting Entergy Miss., Inc. v. Burdette Gin Co., 726 So.2d 1202, 1207 (¶ 11) (Miss.l998)). Two types of unconscionability have been recognized by the eourts-procedural and substantive. Taylor, 826 So.2d at 714 (¶ 13).
A. Procedural Unconscionability
¶ 26. Procedural unconscionability can be shown by: (1) lack of knowledge; (2) lack of voluntariness; (3) inconspicuous print; (4) the use of complex, legalistic language; (5) disparity in sophistication or bargaining power of the parties; and/or (6) lack of opportunity to study the contract and inquire about the terms. MS Credit Ctr., Inc. v. Horton, 926 So.2d 167, 177 (¶ 30) (Miss.2006) (quoting Taylor, 826 So.2d at 714 (¶ 13)). The last three factors are dispensed with easily. The arbitration clause clearly states that any claims arising out of or relating to the agreement are subject to arbitration, and it does not contain complex legalistic language. In addition, no argument has been made regarding disparity in sophistication or bargaining power of the parties or lack of opportunity to read the contract. In fact, the check manager testified that she gives customers an opportunity to review the contract and ask questions.
¶ 27. The only evidence presented by the plaintiffs pertaining to the lack of knowledge factor is the lack of knowledge of the check manager for Zippy Check, not the lack of knowledge of the plaintiffs. Although the check manager’s knowledge is not at issue, she indicated an understanding of the arbitration clause. She said that, if customers asked her what the arbitration provision meant, she would explain that it meant they were waiving their right to a jury trial. Regardless, the check manager did not have a duty to explain all of the contract terms to the plaintiffs. Horton, 926 So.2d at 177 (¶ 32) (“[T]his Court has never held that one party to an arm’s-length contract has an inherent duty to explain its terms to the other.”). It is well established that individuals “have an inherent duty to read the terms of a contract prior to signing[.]” Id. at 177 (¶ 31). “[A] party may neither neglect to become familiar with the terms and conditions and then later complain of lack of knowledge, nor avoid a written contract merely because he or she failed to read it or have someone else read and explain it.” Id. There is no evidence of lack of knowledge here.
¶ 28. Regarding the inconspicious print factor, the Court of Appeals found that the arbitration provision in the older agreement was in a “much smaller font” than the transactional terms. Caplin, 145 So.3d at 682-83, 2013 WL 1878879, ⅜6 (¶ 28). *619 Although the majority does not address it, I will discuss the font size issue because the Court of Appeals’ language regarding the “much smaller font” is the only issue actually raised in Zippy Check’s petition for writ of certiorari. Zippy Check argues that the difference in font sizes does not render the arbitration provision procedurally unconscionable, because it does not rise to the level of the significant difference at issue in East Ford v. Taylor, in which the Court held that an arbitration clause was procedurally unconscionable where it was “less than one-third the size of many other terms in the document.” Taylor, 826 So.2d at 716-17 (¶ 21).
¶ 29. The font for the additional terms on the back of the Zippy Check agreement is indeed smaller than the font used for the transactional terms on the front. .However, the arbitration provision is formatted identically to all of the “additional” terms, and the arbitration clause is not hidden in a smaller font among the other terms. There is no requirement that arbitration provisions be set off or distinguished more than other provisions. In fact, the Federal Arbitration Act prohibits putting additional requirements on arbitration provisions; rather, arbitration provisions must be treated equally with other contractual terms. See Doctor’s Assocs., Inc. v. Casarotto, 517 U.S. 681, 687, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996). We have written:
The United States Supreme Court— whose decisions the justices on this Court are bound by oath to follow — has clearly declared that Section 2 of the FAA prohibits courts (including this Court) from singling out arbitration provisions for special treatment. That is to say, it prevents courts from placing more stringent requirements for the enforcement of arbitration provisions than for other provisions in a contract. Doctor’s Assocs., Inc. v. Casarotto, 517 U.S. 681, 687,116 S.Ct. 1652,134 L.Ed.2d 902 (1996).
Horton, 926 So.2d at 173-74 (¶ 16). An arbitration clause is sufficient if it is “at least as open and obvious as other contractual provisions.” Id. at 178 (¶ 34). Such is the case here, and the arbitration provision is not so inconspicuous as to be procedurally unconscionable.
¶ 30. The final factor is lack of volun-tariness. The Court has said that “[l]ack of voluntariness is demonstrated in contracts of adhesion,” which often arise “when there is a great imbalance in the parties’ relative bargaining power” or where the contract is “presented to a party on a take it or leave it basis.” Taylor, 826 So.2d at 715-16 (¶¶ 18-19) (quoting Entergy Miss., Inc., 726 So.2d at 1207-1208 (¶¶ 12, 15) (internal citations omitted)). The majority finds that both contracts at issue amounted to contracts of adhesion. (Maj.Op.15.) However, contracts of adhesion are not automatically void. See Taylor, 826 So.2d at 716 (¶ 20) (quoting Hughes Training, Inc. v. Cook, 254 F.3d 588, 593 (5th Cir.2001)).
The fact that an arbitration agreement is included in a contract of adhesion renders the agreement procedurally unconscionable only where the stronger party’s terms are unnegotiable and “the weaker party is prevented by market factors, timing[,] or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all.”
Taylor, 826 So.2d at 716 (¶20) (quoting Entergy Miss., Inc., 726 So.2d at 1207(12) (emphasis added)). Accordingly, for an arbitration provision to be rendered procedurally unconscionable as part of a contract of adhesion, two factors must be present: (1) the stronger party’s terms are unnegotiable, and (2) the weaker party is prevented from contracting with another *620 party by market factors, timing, or other pressures.
¶ 31. The terms in Zippy Check’s pre-printed, form agreement are not negotiable. The check manager testified that if customers did not agree to the terms, she would not be able to loan them money. Further, the argument can be made that there is an imbalance in the bargaining power of parties to a delayed-deposit agreement, as the party seeking cash advance services has a need for immediate cash that is not otherwise available. However, the customers have the option of choosing from numerous entities that provide the same service. Therefore, while the terms of the preprinted, form agreement may not be negotiable on an individual basis, customers certainly have the ability to chose another check cashing business whose terms may be more favorable. The plaintiffs presented no evidence that they were “prevented by market factors, timing!,] or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all.” Taylor, 826 So.2d at 716 (¶20). Therefore, I do not find the arbitration provision to be procedurally unconscionable as part of a contract of adhesion.
B. Substantive Unconscionability
¶ 32. Because the Court of Appeals agreed with the trial court that the arbitration provision in the older agreement was procedurally unconscionable, it did not address whether that agreement was substantively unconscionable, nor did the parties raise substantive unconscionability in their petition. However, the majority’s analysis is based solely on substantive unconscionability. (Maj.Op.13.) The arbitration provision used is a standard arbitration clause, and the requirement to arbitrate is not in itself unconscionable. However, the plaintiffs claim — and the majority accepts — that the agreement unfairly allowed Zippy Check to pursue judicial remedies for debt collection while limiting the plaintiffs to arbitration for all claims.
¶ 33. The clause providing that Zippy Check could pursue judicial remedies for debt collection was separate from the arbitration clause, which required “[a]ny controversy or claim arising out of or relating to this contract” to be settled by arbitration. Construing the terms together, it is clear that Zippy Check could use judicial remedies only for debt collection, not for all claims against the plaintiffs. Should any claim or controversy arise, other than debt collection, Zippy Check would be limited to arbitration. A similar situation was present in Sawyers v. Herrin-Gear Chevrolet, where a contract for the purchase of a vehicle required arbitration for any claims related to the purchase of the vehicle, “[e]xcept for an action by [djealer to obtain possession and/or replevin of the [vjehicle.” Sawyers, 26 So.3d at 1029 (¶ 5). In that case the Court wrote:
The arbitration agreement does permit Herrin-Gear to bring an action for possession and/or replevin of the vehicle purchased by Sawyers in a court of law rather than resolving the matter by binding arbitration. However, mutuality of obligation is not required for a contract to be enforceable. Murphy v. Amsouth Bank, 269 F.Supp.2d 749, 752 (S.D.Miss.2003). See also McKenzie Check Advance of Miss., LLC v. Hardy, 866 So.2d 446, 453 (Miss.2004) (“[p]ursu-ant to Mississippi law, mutuality of obligation is not required for an arbitration agreement to be enforceable ... ”). Also, as discussed by the trial court, “[i]t is common for such provisions to be contained in an arbitration agreement where there is collateral or a security interest at stake, because an arbitrator *621 would not have authority to grant certain relief that only courts could give.” As such, the provision whereby a limited exception to arbitration is given only to Herrin-Gear to obtain possession of the subject vehicle by replevin in the event of Sawyer’s default under the terms of the sales contract does not render the arbitration agreement substantively unconscionable.
Sawyers, 26 So.3d at 1035 (¶ 22). Likewise, an exception to arbitration for debt collection should not render the agreement substantively unconscionable.
¶ 34. In Covenant Health & Rehabilitation of Picayune, LP v. Estate of Moulds ex rel. Braddock, 14 So.3d 695 (Miss.2009), the Court wrote:
Substantive unconscionability is proven by oppressive contract terms such that “there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party’s nonperformance or breach....” [Bank of Indiana v. Holyfield, 476 F.Supp. 104, 110 (S.D.Miss.1979) ]. One example of a one-sided agreement is one that allows one party to go to court, but restricts the other to arbitration. See Pridgen v. Green Tree Fin. Servicing Corp., 88 F.Supp.2d 655, 658 (S.D.Miss.2000).
Estate of Moulds, 14 So.3d at 699-700 (¶ 12). The agreement at issue is not so one-sided that the plaintiffs are left without a remedy. They can take their claims to arbitration. Notably, although Moulds cited Pridgen v. Green Tree for the premise that an agreement permitting one party to go to court but restricting the other party to arbitration is a one-sided agreement, the Pridgen Court upheld the arbitration agreement in that case, writing:
... Green Tree argues that such one-sidedness has been held to be an insufficient basis upon which to find the arbitration clause unconscionable, citing Harris v. Green Tree Fin. Corp., 183 F.3d 173 (3rd Cir.1999) and Green Tree Fin. Corp. of Ala. v. Vintson, [753 So.2d 497 (Ala.1999).] In Harris, addressing the very arbitration clause that is involved in the case sub justice, the United States Court of Appeals for the Third Circuit held that, under Pennsylvania law, mutuality of obligation was not required for the arbitration clause to be enforceable, as long as the underlying contract was supported by consideration. Harris, 183 F.3d at 179-81. That is, the fact that judicial remedies were not available to both parties did not make the clause unconscionable or unenforceable. The Third Circuit also noted that this holding comported with the majority opinion of other federal courts that had addressed the issue. Id. at 180 (citing Doctor’s Assocs., Inc. v. Distajo, 66 F.3d 438 (2d Cir.1995); Wilson Elec. Contractors, Inc. v. Minnotte Contracting Corp., 878 F.2d 167 (6th Cir.1989); Dorsey v. H.C.P. Sales, Inc., 46 F.Supp.2d 804 (N.D.Ill.1999); Randolph v. Green Tree Fin. Corp., 991 F.Supp. 1410 (M.D.Ala.1997)).
The United States Court of Appeals for the Fifth Circuit has not directly addressed this issue. However, Mississippi law is in accord with the law of Pennsylvania, upon which the Third Circuit based its decision in Harris, in that mutuality of obligation is not required for a contract to be enforceable. Clinton Serv. Co. v. Thornton, 233 Miss. 1, 100 So.2d 863, 866 (1958). Therefore, the arbitration clause is not unenforceable solely because it is one-sided. Moreover, even though the Court could still consider the one-sidedness as a factor in determining whether the clause was substantively unconscionable, Plaintiffs only assertion that the clause is substan *622 tively unconscionable is that it is one-sided. As stated above, however, the majority opinion seems to be that such one-sidedness is not, alone, sufficient to find the clause unconscionable. The Court finds persuasive the reasoning of the Third Circuit in Harris, as well as the cases cited therein. Accordingly, the Court finds that the arbitration clause is not unconscionable, especially in light of the federal policy favoring arbitration. The Court thus finds that the motion of Green Tree to dismiss and compel arbitration should be granted.
Pridgen, 88 F.Supp.2d at 658-59 (footnote omitted). Also worth noting is the fact that the issue is well-settled in Mississippi federal courts. In Murphy v. Amsouth Bank, 269 F.Supp.2d 749 (S.D.Miss.2003), the Southern District Court wrote:
Regarding the mutuality issue, plaintiffs argue because the arbitration agreement mandates arbitration of any claim they might choose to assert, while reserving unto AmSouth the right to utilize the remedies of foreclosure, selfhelp repossession^] and replevin in a court, the agreement lacks mutuality of obligation and is for that reason unconscionable and unenforceable. This court has previously rejected this identical argument. See First Family Financial Services, Inc. v. Fairley, 173 F.Supp.2d 565, 572 (S.D.Miss.2001) (holding that “ ‘mutuality of obligation is not required for a contract to be enforceable,’ and an ‘arbitration clause is not unenforceable solely because it is one-sided.’ ”) (quoting Pridgen v. Green Tree Financial Semcing Corp., 88 F.Supp.2d 655, 659 (S.D.Miss.2000)); see also Raesly v. Grand Housing, Inc., 105 F.Supp.2d 562, 570 (S.D.Miss.2000) (same).
Murphy, 269 F.Supp.2d at 752.
¶ 35. The majority relies on Pitts v. Watkins, 905 So.2d 553 (Miss.2005), in which the Court held that an arbitration clause containing some of the same restrictions as the instant contract was substantively unconscionable. Pitts, 905 So.2d at 555 (¶ 10). The arbitration clause in Pitts restricted the parties to arbitration, with the exception that Watkins could pursue claims for nonpayment of his fee in court. Id. The contract also limited the amount that the Pittses could recover to the amount paid for their home inspection and imposed a one-year statute of limitations. Id. at 556-58 (¶¶ 12, 17). The Court held that “[t]he limitation of liability clause, when paired with the arbitration clause, effectively denies the plaintiff ... an adequate remedy and is further evidence of substantive unconscionability.” Id. at 557 (¶15).
¶ 36. The contract in Pitts was similar to the Zippy Check contract in that both parties were required to take all claims to arbitration, with one exception. In Pitts, Watkins was required to arbitrate all claims with the exception of disputes based on the payment of his fee. Id. at 560 (¶ 28) (Dickinson, J., dissenting). Likewise, here, Zippy Check is required to arbitrate claims arising out of the contract with the exception of debt collection. As discussed above, in Sawyers v. Herrin-Gear Chevrolet, the Court upheld an arbitration agreement where the contract required arbitration for any claims related to the purchase of the vehicle, “[e]xcept for an action by [d]ealer to obtain possession and/or replevin of the [v]ehicle.” Sawyers, 26 So.3d at 1029 (¶ 5). The holding in Sawyers was subsequent to Pitts v. Watkins and is consistent with numerous decisions from Mississippi federal courts. Thus, I would hold, consistent with Sawyers, that the fact that one party retains the option to use judicial remedies for specific purposes — especially a purpose that generally requires judicial enforce *623 ment (i.e., collection, replevin, repossession) — should not invalidate an agreement to arbitrate. Pitts v. Watkins was an exception to the general rule and, in my opinion, it should be overruled.
¶ 37. Relying on Pitts v. Watkins, the majority finds that the contract is unconscionable because it limits Zippy Check’s liability and provides that the plaintiffs would have to pay attorney’s fees and the cost of collection. (Maj.Op.19.) That issue was not raised by the plaintiffs. I recognize that “[cjlauses that limit liability are given strict scrutiny by this Court and are not to be enforced unless the limitation is fairly and honestly negotiated and understood by both parties.” Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc., 857 So.2d 748, 754 (¶ 18) (Miss.2003). However, that issue is for the arbitrator. After finding that the dispute is subject to arbitration and that the arbitration agreement itself is not unconscionable, any other claims related to the contract must be submitted to arbitration. See Rent-A-Ctr., W., Inc. v. Jackson, 561 U.S. 63, 130 S.Ct. 2772, 2778,177 L.Ed.2d 403 (2010) (A “challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate.”); Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445-46, 126 S.Ct. 1204, 163 L.Ed.2d 1038 (2006) (challenges to the contract other than to the arbitration provisions should be considered by the arbitrator); Will-Drill Res., Inc. v. Samson Res. Co., 352 F.3d 211, 218 (5th Cir.2003) (“Only if the arbitration clause is attacked on an independent basis can the court decide the dispute; otherwise, general attacks on the agreement are for the arbitrator.”). Arbitration is limited to choice of forum. Estate of Moulds, 14 So.3d at 697, 703 (¶¶ 3, 25). The limitation of liability provision in the Zippy Check contract is separate from the arbitration clause. Thus, the validity of that provision — and allegations of un-conscionability as to any other provision in the contract — should be submitted to the arbitrator.
¶ 38. The majority also relies on Estate of Moulds to support its position that the arbitration agreement is substantively unconscionable. The Court’s finding of unconscionability in Estate of Moulds was based on reasons not at issue here. The contract in that case had been the subject of several lawsuits that had come before this Court and the Court of Appeals. In each case, the appellate courts found additional provisions of the contract to be unconscionable, each time striking the unconscionable provisions, but enforcing arbitration. In Estate of Moulds, the Court wrote:
[Ejach time this contract has come before this Court, the litigants have urged additional terms to be declared unconscionable and unenforceable. In Stephens, clauses E7 and E8 were invalidated by this Court. [Vicksburg Partners, L.P. v. Stephens, 911 So.2d 507, 523-24 (Miss.2005).] In Brown, in addition to E7 and E8, this Court reformed the contract to invalidate clauses C5, C8, E5, E6, E12, E16, and the last sentence of the arbitration agreement. [Covenant Health Rehab of Picayune, L.P. v. Brown, 949 So.2d 732, 741-42 (Miss.2007).] Covenant Health concedes that all these provisions are unenforceable in this case. In a previous case before the Court of Appeals, Covenant Health conceded the unen-forceability of all these provisions, as well as two additional clauses, D4 and E13. Covenant Health & Rehab, of Picayune, LP v. Estate of Lambert, 984 So.2d 283, 287 (Miss.Ct.App.2006). In another case before the Court of Appeals, the Court of Appeals found several provisions unenforceable, including *624 E14, which was held to be in violation of a statute. [Trinity Mission of Clinton, LLC v. Barber, 988 So.2d 910, 928 (Miss.Ct.App.2007).]
Estate of Moulds, 14 So.3d at 701-02 (¶ 20) (emphasis in original, footnotes omitted). By the time the contract was before the Court in Estate of Moulds, no less than a dozen separate provisions had been struck from the contract. Id. And in Estate of Moulds, the Court found at least three more “questionable provisions.” Id. at 702 (¶ 21). Further, the arbitration forum required by the agreement was no longer available to the parties. Id. at 706-709 (¶¶ 36-45). The Court held that the unavailability of the arbitration forum, “coupled with a multitude of unconscionable provisions” in the contract, rendered the entire contract unconscionable. Id. at 703 (¶ 25). The Court wrote:
Based on the issues considered and the application of basic contract-law principles, we conclude that this contract is unconscionable, as it contains numerous unconscionable provisions. The contract weaves unconscionable nonforum terms into the arbitration provision. Arbitration is limited to choice of forum. See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, 473 U.S. 614, 628, 105 S.Ct. 3346, 3354, 87 L.Ed.2d 444, 456 (1985); Stephens, 911 So.2d at 525. This conclusion is consistent with our body of law regarding the enforcement of contracts, and conforms to the national body of law addressing similar issues. The course we follow exceeds the excision of numerous unconscionable provisions, and voids the contract. Furthermore, since arbitration is about forum choice, were we to assume arguendo the validity of the contract, the contested agreement to arbitrate still would be unenforceable, as the forum putatively agreed upon is unavailable. The learned trial judge rightly denied arbitration as the forum for this dispute.
Estate of Moulds, 14 So.3d at 697-98 (¶ 3). Unlike the contract at issue in Estate of Moulds, the contract in the case sub judice has not woven “unconscionable nonforum terms into the arbitration provision.” Id. The nonforum terms, unconscionable or not, are not part of the arbitration clause. The arbitration clause is simply one term in the contract; it stands alone, as do the other provisions. The plaintiffs have not asked the courts to invalidate the entire contract, and I decline to do so.
¶ 39. We are called upon to consider only whether the arbitration clause should be enforced. “The party resisting arbitration must shoulder the burden of proving a defense to arbitration.” Norwest Fin. Miss., Inc. v. McDonald,, 905 So.2d 1187, 1193 (¶ 11) (Miss.2005) (citing Green Tree Fin. Corp.-Alabama v. Randolph, 531 U.S. 79, 92, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000)). The plaintiffs have the burden of proving that the arbitration clause is unconscionable. Zippy Check does not bear that burden. Nor do we. I find no evidence that the arbitration provision itself was oppressive or left the plaintiffs without a remedy. Rather, the provision “merely submits the question of liability to a forum other than the courts.” Horton, 926 So.2d at 179 (¶ 38) (citing Taylor, 826 So.2d at 716 (¶20)).
¶ 40. In my opinion, the arbitration provision is neither procedurally nor substantively unconscionable and no legal constraints external to the parties’ agreement foreclose arbitration. Disputes about any other provisions of the contract should be submitted to the arbitrator. Therefore, I would reverse the Court of Appeals’ judgment affirming the trial court’s denial of Zippy Check’s motion to compel arbitration as to the eight plaintiffs who signed *625 the older agreement and remand the cases for the parties to submit to arbitration.
DICKINSON, P.J., JOINS THIS OPINION.