# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2013-CA-00369-SCT

*LACIE CYLESS SMITH*

*v.*

*EXPRESS CHECK ADVANCE OF MISSISSIPPI, LLC*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/30/2013 |
| TRIAL JUDGE: | HON. LEE J. HOWARD |
| TRIAL COURT ATTORNEYS: | JIM WAIDE |
| | RON L. WOODRUFF |
| | J. TUCKER MITCHELL |
| COURT FROM WHICH APPEALED: | CLAY COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | JIM WAIDE |
| | RON L. WOODRUFF |
| ATTORNEYS FOR APPELLEE: | J. TUCKER MITCHELL |
| | STEPHEN DEAN STAMBOULIEH |
| NATURE OF THE CASE: | CIVIL - CONTRACT |
| DISPOSITION: | AFFIRMED - 10/02/2014 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1. When Express Check Advance of Mississippi, LLC, employed Lacie Smith, she agreed to submit "any employment-related dispute" to arbitration. Later, in response to her termination, Smith commenced legal proceedings against Express Check in circuit court. The trial judge compelled arbitration and Smith appealed. We affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2. When Express Check hired Smith for a clerical position, she signed a two-page document entitled "Non-Competition and Confidentiality Agreement." Section six of that document stated:

6. ENFORCEMENT.

***6.1 Injunctive Relief.*** Associate acknowledges that it would be difficult to fully compensate the Employer for damages resulting from any breach by Associate of the provisions of, this Agreement. Accordingly, Associate agrees that, in addition to, but not to the exclusion of, any other remedy, the Employer shall have the right to enforce the provisions of this Agreement by applying for and obtaining temporary and permanent restraining orders or injunctions from a court of competent jurisdiction without the necessity of filing a bond therefore, and without the necessity of proving actual damages, and the Employer shall be entitled to recover from Associate its reasonable attorneys' fees and costs in enforcing the provisions of this Agreement.

***6.2 Settlement by Arbitration.*** Pursuant to the terms of this Agreement, and in valuable consideration received in exchange therefore, the parties hereto agree that any employment-related dispute, controversy or claim that Associate may have with Employer and/or any of its associates, officers, members, managers, governors, parents, subsidiaries, affiliates or agents, in their capacity as such or otherwise, or that Employer and/or any of its associates, officers, members, managers, governors, parents, subsidiaries, affiliates or agents may have with Associate, shall be resolved only through arbitration and **not through litigation in federal, state or local court.**

Associate agrees that he/she cannot bring any claim or lawsuit, or act as a lead plaintiff in or otherwise participate in any class action lawsuit, in any federal, state or local court involving this Agreement, application or candidacy for employment, employment, or cessation of employment with Employer, including, but in no way limited to, claims arising under Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991, the Age Discrimination in Employment Act, the Americans with Disabilities Act, the Family and Medical Leave Act of 1993, 42 U.S.C. § 1981, the Associate Retirement Income Security Act (ERISA), the Fair Labor Standards Act, the Occupational Health and Safety Act, the Worker Adjustment and Retraining Notification Act, the human rights act, or similar act, of any state, the public protection act, or similar act, of any state, any claim based on express or implied contract, any

claims of promissory estoppel, any action arising in tort, including, but in no way limited to, libel, slander, defamation, intentional infliction of emotional distress, or negligence, any claim for wrongful discharge, any constitutional claims or any claims under all laws relating to the violation of public policy, retaliation or compensation, any claims arising under employment or disability discrimination or whistleblower laws, or any other statutory or common-law claims under federal, state or local law. A dispute, controversy or claim is also considered subject to this policy if it arises or involves any issue pertaining to this Agreement, the formation of this Agreement, the scope of this Agreement or the Party's performance of this Agreement. Associate understands that he/she is waiving the right to a jury trial for any such claim. This provision is mutually binding upon both Employer and Associate, as indicated by the acknowledgment set forth below.

Associate understands that he/she has the right to be represented by the attorney of his/her choice in pursuing any employment-related dispute, controversy or claim under this Agreement. Associate further understands and agrees that the decision of the Arbitrator will be FINAL AND BINDING on all parties to the dispute. There is no appeal on the merits of the dispute to federal, state or local courts.

This section is to be construed pursuant to the terms of the Federal Arbitration Act, 9 U.S.C. § 1 et seq. The provisions of any arbitration act or statute under the laws of the State of Mississippi, do not apply to this section.

¶3.    Section seven included miscellaneous provisions, including a severability clause, a choice-of-law provision, and a notation that "[t]he headings contained in this Agreement are for reference purposes only and shall not in any way affect the meaning or interpretation of this Agreement."

¶4.    Smith signed the agreement and separately initialed an acknowledgment accepting the arbitration provision. She also initialed an acknowledgment that she had read the entire agreement.

¶5.    After Express Check terminated Smith, she filed suit, claiming that she was fired for reporting her supervisor's illegal acts. Express Check answered, denied the allegations, and

moved to compel arbitration pursuant to the "Non-Competition and Confidentiality Agreement." Smith responded to Express Check's motion by arguing that the agreement was procedurally and substantively unconscionable, that she never knowingly agreed to arbitrate her claims, and that she signed the agreement under duress.

¶6.     At the hearing on its motion, Express Check introduced the agreement and Smith testified, arguing that the arbitration clause was procedurally unconscionable because no one told her to read the agreement or explained its meaning. She also argued that the agreement was substantively unconscionable because she lacks the financial resources to bear the cost of arbitration.

¶7.     In his order compelling arbitration, the trial judge stated that the agreement was not procedurally unconscionable because, unless illiterate, Smith had a duty to read it, and that she could have refused to sign the agreement and sought employment elsewhere. He also found that the agreement was not substantively unconscionable because Smith failed to produce any evidence of the cost of arbitration. Smith appealed.

**ANALYSIS**

¶8.     In reviewing an appeal of an order compelling arbitration, we review the trial judge's factual findings under an abuse-of-discretion standard,[1] and we conduct a *de novo* review of all legal conclusions.[2]

***The Federal Arbitration Act***

---

[1] ***Ill. Cent. R.R. Co. v. McDaniel***, 951 So. 2d 523, 526 (Miss. 2006).

[2] ***Virginia Coll., LLC v. Blackmon***, 109 So. 3d 1050, 1053 (Miss. 2013) (citing ***Univ. Nursing Assocs., PLLC v. Phillips***, 842 So. 2d 1270, 1276 (Miss. 2003)).

4

¶9. Through the Federal Arbitration Act, Congress imposed a national policy in favor of arbitration.[3] Arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[4] The statute's effect extends to arbitration agreements in employment contracts.[5]

¶10. The Act ensures that "[a]rbitration agreements and other contract terms should be on equal footing, in that state courts may not invalidate arbitration agreements under laws that affect only arbitration agreements,"[6] and that "arbitration clauses shall not receive especial treatment not otherwise available under basic state contract principles."[7] So, courts must compel arbitration if the parties validly agreed to arbitrate the dispute at issue.[8]

¶11. To determine whether parties agreed to arbitrate their disputes, courts invoke a two-pronged inquiry. Under the first prong, a court must ascertain whether an agreement to arbitrate exists, the scope of which encompasses the parties' dispute.[9] Under the second prong, the court must question "whether legal constraints external to the parties' agreement

---

[3] *Covenant Health & Rehab., LP v. Estate of Moulds*, 14 So. 3d 695, 698 (Miss. 2009) (citing *IP Timberlands Operating Co. v. Denmiss Corp*, 726 So. 2d 96, 107 (Miss. 1998) (quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S. Ct. 852, 79 L. Ed. 2d 1, 12 (1984) (citing 9 U.S.C. § 2 (1976)))).

[4] 9 U.S.C. § 2 (1976).

[5] *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109, 121 S. Ct. 1302, 1306, 149 L. Ed. 2d 234 (2001).

[6] *Moulds*, 14 So. 3d at 699 (citing *Doctor's Assocs. v. Casarotto*, 517 U.S. 681, 687, 116 S. Ct. 1652, 1656, 134 L. Ed. 2d 902, 909 (1996)).

[7] *Moulds*, 14 So. 3d at 699.

[8] *Rogers-Dabbs Chevrolet-Hummer, Inc. v. Blakeney*, 950 So. 2d 170, 173 (Miss. 2007).

[9] *Id.* (quoting *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 713 (Miss. 2002)).

foreclosed arbitration of those claims."[10] Under this prong, state contract defenses may invalidate the agreement to arbitrate as they would any other contractual provision.[11] But because of the national policy favoring arbitration, the party opposing arbitration bears the burden to prove that a contract defense applies in the particular case.[12]

¶12. Here, neither party disputes that the arbitration clause purports to submit Smith's claim to arbitration. Indeed, the arbitration provision's broad language references "all employment-related disputes," and it specifically includes "any claim for wrongful discharge." Instead, Smith attacks the enforcement of that provision based on the doctrine of unconscionability, one of the "legal constraints external to the parties' agreement" which may foreclose enforcement.[13]

### *Unconscionability*

¶13. So important to our Founders was the freedom to contract without interference from the government or the courts, that they constitutionally prohibited any State from passing any law "impairing the obligations of contracts . . . ."[14] That is not to say that our Founders believed courts should never, for any reason, set aside a contractual obligation. But such instances should be the rare exception rather than the general rule; and the basis for granting

---

[10] *Rogers-Dabbs*, 950 So. 2d at 173 (quoting *East Ford*, 826 So. 2d at 713).

[11] *Moulds*, 14 So. 3d at 699.

[12] *Norwest Fin. Miss., Inc. v. McDonald*, 905 So. 2d 1187, 1193 (Miss. 2005) (citing *Green Tree Fin. Corp.-Alabama v. Randolph*, 531 U.S. 79, 92, 121 S. Ct. 513, 522, 148 L. Ed. 2d 373 (2000)).

[13] *Moulds*, 14 So. 3d at 699 (quoting *East Ford*, 826 So. 2d at 713).

[14] U.S. Const., art. I, § 10.

6

such extraordinary relief to a contracting party should not be a judge's subjective conclusion that the contract is not fair. Fairness is for the parties to decide. That is why the doctrine of unconscionability traditionally has applied only to the most egregious of contractual situations.

¶14. An unconscionable contract is "one such as no man in his senses and not under a delusion would make on the one hand, and as no honest and fair man would accept on the other . . . ."[15] We previously have held:

> Corbin expounds on the meaning of "unconscionable" as follows:
>
>> "Unconscionable" is a word that defies lawyer-like definition. It is a term borrowed from moral philosophy and ethics. As close to a definition as we are likely to get is "that which 'affronts the sense of decency.'" A much-quoted judicial definition is "an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party."[16]
>
> Our precedent follows the *Williams* ("absence of meaningful choice") language as quoted above from Corbin. Unconscionability can be procedural or substantive. Under "substantive unconscionability, we look within the four corners of an agreement in order to discover any abuses relating to the specific terms which violate the expectations of, or cause gross disparity between, the contracting parties." Substantive unconscionability is proven by oppressive contract terms such that "there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party's nonperformance or breach . . . ."[17]

---

[15] *Terre Haute Cooperage v. Branscome*, 203 Miss. 493, 35 So. 2d 537, 541 (1948).

[16] *Moulds*, 14 So. 3d at 699 (quoting *Corbin on Contracts* § 29.4 (2009) (quoting *Gombel Bros. Inc. v. Swift*, 62 Misc. 2d 156, 307 N.Y.S.2d 952, 954 (1970); *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965))).

[17] *Moulds*, 14 So. 3d at 699 (citing *Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207 (Miss. 1998); *East Ford*, 826 So. 2d at 714; *Vicksburg Partners, L.P. v. Stephens*, 911 So. 2d 507, 521 (Miss. 2005), *overruled on other grounds by Moulds*, 14 So. 3d at 706; *Bank of Ind.,*

7

¶15.    This passage reflects certain characteristics of a substantively unconscionable contract.  An unconscionable contract "affronts the sense of decency."[18]  The terms of a substantively unconscionable contract are so unreasonably favorable to one party that the contract imposes oppressive terms on the weaker party.[19]  And unconscionability may be evidenced, but not established, by showing that the contract is one of adhesion.[20]

¶16.    Contracts of adhesion "are those that are 'drafted unilaterally by the dominant party and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms. Such contracts are usually prepared in printed form . . . .'"[21]  The contract before us may be one of adhesion.  It appears to be a preprinted form contract prepared by Express Check.  But Smith failed to present any evidence that the contract was presented on a take-it-or-leave-it basis.  So we cannot know for sure.  And even if we could, "finding a contract to be one of adhesion does not automatically mean that the contract or any provision thereof is substantively unconscionable."[22]  So, regardless, we must look to the agreement's terms to determine if they are oppressive.

---

*Nat'l Ass'n v. Holyfield*, 476 F. Supp. 104, 110 (S.D. Miss. July 24, 1979)).

[18] *Moulds*, 14 So. 3d at 699 (internal citations omitted).

[19] *Id.*

[20] *Id.* at 701 (citing *Stephens*, 911 So. 2d at 523, *overruled on other grounds by Moulds*, 14 So. 3d at 706).

[21] *Moulds*, 14 So. 3d at 701 (quoting *East Ford*, 826 So. 2d at 716).

[22] *Moulds*, 14 So. 3d at 701 (citing *Stephens*, 911 So. 2d at 523, *overruled on other grounds by Moulds*, 14 So. 3d at 706).

¶17. Looking to the agreement, we cannot say its terms are so one-sided as to become substantively unconscionable. Section 6.2 of the agreement sets out a mutually binding arbitration clause. Were we to consider this evidence of unconscionability, we would run afoul of the Federal Arbitration Act's mandate to favor arbitration.

¶18. Section 6.1, however, presents two one-sided terms. First, while the contract relegated both parties' claims to arbitration, it maintained Express Check's right to seek injunctive relief from a court of competent jurisdiction. We have held that an arbitration agreement, which submitted one party's claims to arbitration while maintaining the broad access to judicial remedies for the other party's claims was unconscionable.[23] But that case is distinguished because here—except for the limited right to seek injunctive relief—Express Check is bound to arbitration as well.

¶19. Second, that section provides that Smith must pay reasonable attorneys' fees and costs incurred by Express Check. The provision is found in the injunctive-relief section of the agreement. It is the third statement in a sentence which otherwise solely relates to injunctive relief. So a fair reading of the agreement leads to the conclusion that it applies to injunctive relief alone. And the provision does not absolutely entitle Express Check to attorneys' fees and costs. The clause states ". . . and the Employer shall be entitled to recover from associates its reasonable attorneys' fees and costs in *enforcing the provisions of this agreement*." (Emphasis added.) In order to "enforce" an agreement, one must prevail on his

---

[23] *Moulds*, 14 So. 3d at 700 (citing *Pridgen v. Green Tree Fin. Servicing Corp.*, 88 F. Supp. 2d 655, 658 (S.D. Miss. 2000).

9

contract claim. The provision would be of no benefit to Express Check unless it prevailed in obtaining injunctive relief against Smith.

¶20. So, while the provision does favor Express Check to some degree, we cannot say it is so one-sided as to be oppressive or unconscionable. Nor do we find it substantively unconscionable. As stated above, Smith bears the burden to show that the agreement is unconscionable,[24] and, although she testified to her limited financial means, Smith failed to present any evidence of the costs of arbitration. Without that evidence, we cannot say that costs prohibit Smith from pursuing arbitration.

¶21. To find the agreement substantively unconscionable, the dissent incorrectly shifts the burden of proof to Express Check, presumes facts unsupported by the evidence, and misconstrues the evidence presented at trial. First, the dissent states that the agreement was presented to Smith on a take-it-or-leave-it basis. The record is devoid of one shred of evidence to support that statement. Next, the dissent states that "unemployment rates were high" when Smith sought employment from Express Check, but the record is devoid of a single reference to employment rates at that time. Then, the dissent states that "[i]t is also reasonable to assume that market factors, i.e., difficulty finding another job, prevented Smith from contracting with another party or employer." Once again, Smith presented no evidence that alternative employment was unavailable or that she even had attempted to seek other employment.

¶22. Similarly, the dissent rebukes the trial judge's statement that Smith could have "sought employment elsewhere" by stating that "there is no evidence as to how difficult

---

[24] *Norwest* 905 So. 2d at 1193 (citing *Green Tree*, 531 U.S. at 92).

obtaining such employment might have been or how much such employment might have paid, as compared to Express Check." True, no such evidence was presented. But if Smith wanted to rely on the lack of alternative employment to show that the agreement was unconscionable, she had the burden to establish those facts, and she failed to do so. Next, the dissent misstates the judicial relief available to Express Check by stating "[i]t allows Express Check to use judicial remedies for virtually all of the breaches of the contract that Smith could conceivably accomplish . . . ." Express Check maintained only a limited right to injunctive relief, not an unbridled right to judicial relief for Smith's breaches. Finally, the dissent assumes, without any evidentiary support, that Smith was so desperate for a job that she signed an unreasonably unfavorable agreement to obtain much-needed employment.

¶23. Simply put, the dissent's view cannot be correct, because Smith had the burden of proof and failed to present evidence in support of these considerations. So we cannot say the agreement was substantively unconscionable.

¶24. Likewise, we do not find the agreement is procedurally unconscionable. Procedural unconscionability is established by showing "a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract terms."[25]

¶25. The print of the arbitration agreement is not inconspicuous. The arbitration agreement is the exact same font as the rest of the contract. It appears at the bottom of page one and the top of page two. It includes a bolded, underlined, and italicized heading stating "Settlement

---

[25] *East Ford*, 826 So. 2d at 714 (quoting *Pridgen*, 88 F. Supp. 2d at 657).

11

by Arbitration." It also uses boldface print when its states all disputes "shall be resolved only through arbitration and **not through litigation in federal, state or local court.**" Further, Smith was required to initial an acknowledgment, set into the text of the arbitration provision, which stated "[b]oth the applicant/associate and the Employer Representative initial below to signify acceptance of the arbitration provision." So we cannot conclude that the provision contains inconspicuous print.

¶26. While the clause does contain some legalistic language, its key terms relating to arbitration are unmistakable. The clause provides "that any employment-related dispute, controversy or claim . . . shall be resolved only through arbitration and **not through litigation in federal, state or local court**" and "that the decision of the Arbitrator will be FINAL AND BINDING on all parties to the dispute. There is no appeal on the merits of the dispute to federal, state or local courts." These statements provided Smith substantial notice that she was agreeing to forego any right to judicial review.

¶27. What is more, Smith failed to produce any evidence that she didn't know what she signed, did so involuntarily, or lacked an opportunity to review and inquire about the terms. Smith admitted that she had signed the document. And while she testified that no one had told her to read the document or explained its terms, she conceded that she could have read it. The law imposes a duty on a contracting party to read what he or she signs.[26] Further, Smith never asked any questions about the document she signed. Simply put, Smith bore the burden to establish these facts, and she failed to do so.

---

[26] ***McKenzie Check Advance of Ms., LLC v. Hardy***, 866 So. 2d 446, 455 (Miss. 2004).

12

¶28. That leaves only the disparity in sophistication or bargaining power of the parties as a potential factor in favor of procedural unconscionability. Even if we were to assume that Express Check possesses an inherent advantage in sophistication and bargaining power over Smith, that imbalance did not result in oppressive terms. Smith simply has failed to produce any evidence of procedural unconscionability.

## CONCLUSION

¶29. Smith failed to satisfy her burden to show that the arbitration agreement is either substantively or procedurally unconscionable, so the trial judge properly compelled arbitration. We affirm.

¶30. **AFFIRMED.**

**RANDOLPH, P.J., LAMAR, PIERCE AND COLEMAN, JJ., CONCUR. KING, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, C.J., AND KITCHENS, J. CHANDLER, J., NOT PARTICIPATING.**

**KING, JUSTICE, DISSENTING:**

¶31. The majority concludes that the arbitration provision is neither substantively nor procedurally unconscionable. Because I believe that the arbitration agreement is unreasonably one-sided and oppressive, I conclude that it is substantively unconscionable; therefore, I respectfully dissent.

¶32. Unconscionability is found when there exists an absence of meaningful choice for one party, together with contract terms that are unreasonably favorable to the other party. *Covenant Health & Rehab. of Picayune v. Estate of Moulds*, 14 So. 3d 695, 699 (Miss. 2009) (quoting *Corbin on Contracts* § 29.4 (2009)). This Court has recognized two types of unconscionability: procedural and substantive. *Id.* "Substantive unconscionability may

13

be proven by showing the terms of the arbitration agreement to be oppressive." *East Ford, Inc. v. Taylor*, 826 So. 2d 709, 714 (Miss. 2002). Oppressive terms may be those in which a one-sided agreement exists, "whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party's nonperformance or breach." *Moulds*, 14 So. 3d at 699-700 (quoting *Bank of Indiana, Nat'l Ass'n. v. Holyfield*, 476 F. Supp. 104, 110 (S.D. Miss. 1979)). "One example of a one-sided agreement is one that allows one party to go to court, but restricts the other to arbitration." *Moulds*, 14 So. 3d at 700.

¶33.    A contract of adhesion is a contract that the dominant party unilaterally drafted "and then presented on a 'take-it-or-leave-it' basis to the weaker party who has no real opportunity to bargain about its terms. Such contracts are usually prepared in printed form . . . ." *East Ford*, 826 So. 2d at 716 (quoting *Holyfield*, 476 F. Supp. at 110). However, a contract of adhesion is not automatically void due to unconscionability. *East Ford*, 826 So. 2d at 716. An arbitration agreement within a contract of adhesion renders the arbitration "agreement . . . unconscionable only where the stronger party's terms are unnegotiable and 'the weaker party is prevented by market factors, timing or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all.'" *Id.* at 716 (quoting *Entergy Miss., Inc. v. Burdette Gin Co.*, 726 So. 2d 1202, 1207 (Miss. 1998)). The fact that the contract is a contract of adhesion makes substantive unconscionability easier to prove, and can thus render a "facially oppressive term presumptively invalid." *Moulds*, 14 So. 3d at 701 (internal quotations omitted).

¶34.    The contract at issue is unquestionably a contract of adhesion. It was a preprinted form drafted by a business, or presumably, by its lawyers, and was presented to Smith on a

14

take-it-or-leave-it basis to sign if she wanted a job. Furthermore, unemployment rates were high, Smith's testimony was that the highest level of education she completed was high school, and the evidence indicates that she is not a worker with any specialized skills. It is certainly reasonable to assume that a disparity in bargaining power exists between the parties, with Express Check holding the advantage. It is also reasonable to assume that market factors, i.e., difficulty finding another job, prevented Smith from contracting with another party or employer. *See Entergy Miss.*, 726 So. 2d at 1207 (where no evidence was put forth regarding the comparative business savvy of the contracting parties, "it is reasonable to assume that a large company such as Entergy holds the advantage in that respect"). While the trial court found that Smith "was not obligated to sign the contract as she could have refused and sought employment elsewhere," this finding has utterly no basis in the record. While she could have ostensibly "sought employment elsewhere," there is no evidence as to how difficult obtaining such employment might have been or how much such employment might have paid, as compared to Express Check. Such considerations are certainly relevant to a determination of unconscionability, and the trial court clearly did not consider them, but rather made an unsupported finding.[27]

¶35. In addition to being a contract of adhesion, the contract at issue allows Express Check to pursue judicial remedies in the form of injunctive relief for Smith's breach of the contract and further mandates that she pay attorneys' fees and costs if Express Check has to enforce

---

[27]For example, an educated and skilled professional with multiple high-paying job offers and comfortable savings may have the reasonable option of refusing to sign an arbitration agreement. It is obvious that an unskilled worker with no savings who desperately needs funds is unlikely to enjoy the same luxury.

*any* of the provisions of the agreement. Smith is entirely relegated to arbitration for any and all breaches of the contract, and nothing provides that she may recover attorneys' fees and costs for her attempts to enforce the contract. A similar provision was deemed substantively unconscionable in *Pitts v. Watkins*, 905 So. 2d 553, 555-56 (Miss. 2005). In that case, an inspection agreement allowed the inspector to go to court, but *only* to recover fee payment, while other claims were relegated to arbitration. *Pitts*, 905 So. 2d at 556. It also allowed him to recover administration costs, attorneys' fees, and costs of litigation, while the other party was relegated solely to arbitration for any breach of the contract. *Id.* The Court found that, because the arbitration provision allowed the inspector limited judicial remedies while relegating the other party entirely to arbitration, the arbitration clause was "clearly one-sided, oppressive, and therefore, substantively unconscionable." *Id.*

¶36.    Recently, in *Caplin Enterprises, Inc. v. Arrington*, this Court examined two different arbitration clauses found within delayed-deposit agreements drafted by Zippy Check, an "older" one and a "newer" one. *Caplin Enterprises, Inc. v. Arrington*, 145 So. 3d 608 (Miss. 2014). The "older" version "provided that Zippy Check could pursue 'all' judicial remedies to collect on the debt, including attaching property and garnishing wages, as well as collecting 'attorney fees and other damages as set forth by the court,' but the plaintiffs had to bring all of their claims to arbitration." *Id.* at 611. The "newer" version "allowed Zippy Check to pursue judicial remedies [for default of payment obligations], while relegating any and all of the plaintiffs' claims to arbitration." *Id.* Thus, both arbitration provisions allowed Zippy Check to pursue judicial remedies for the limited issue of the borrower's default and relegated all other disputes to arbitration. *Id.*

16

¶37.	The Court found that both contracts at issue were contracts of adhesion, as "Zippy Check drafted [them] unilaterally and presented [them] to its customers on a take-it-or-leave-it basis." *Id.* at 615.  The Court deemed both the arbitration clauses unconscionable.  *Id.* at 616-17.  It determined that the "older" clause was "oppressive because it forced the plaintiffs to arbitrate their claims while permitting Zippy Check to pursue remedies for the plaintiffs' breach in court.  Additionally, the contract foisted upon the plaintiffs Zippy Check's cost of hiring an attorney for collection, including 'other damages' ordered by the court." *Id.* at 616.  As to the "newer" arbitration provision that did not limit the borrower's liability or provide that the borrower pay Zippy Check's attorneys' fees, but simply allowed Zippy Check to pursue judicial remedies for default while relegating all other disputes to arbitration, this Court found that it was "clearly oppressive and substantively unconscionable pursuant to *Pitts*."  *Id.* at 617.  The Court noted how desperate the plaintiffs must have been for immediate funds, and that the preprinted contracts were offered on a take-it-or-leave-it basis and were contracts of adhesion, concluding that "[w]hile an arbitration agreement need not contain identical obligations, under the facts of this case, the arbitration agreements were unreasonably favorable to Zippy Check, oppressive, unconscionable, and unenforceable." *Id.*

¶38.	The arbitration provision at issue is one-sided and oppressive and is therefore substantively unconscionable, as it is even more one-sided than the "newer" arbitration agreement in *Arrington*.[28]  It allows Express Check to use judicial remedies for virtually all

---

[28]Consequently, seven justices on this Court found the arbitration provisions in *Arrington* to be unconscionable, with only two justices dissenting.  Likewise, the motion for rehearing in *Arrington* was denied by a vote of seven to two.

of the breaches of the contract that Smith conceivably could accomplish, while also allowing Express Check to recover fees it may incur for any enforcement of contract provisions. Yet it restricts Smith to arbitration for all claims against Express Check and fails to provide that she may recover fees incurred while enforcing the agreement. It is reasonable to assume that Smith was so desperate for a job that she signed an unreasonably unfavorable agreement to obtain much-needed employment. *See id.* at 617. Moreover, the contract at issue is clearly a contract of adhesion, rendering substantive unconscionability easier to prove. Under the facts of this case, the arbitration agreement was unreasonably favorable to Express Check and oppressive, and is thus unconscionable and unenforceable. I would therefore reverse the trial court's order compelling arbitration and remand the case for further proceedings in the trial court.

**WALLER, C.J., AND KITCHENS, J., JOIN THIS OPINION**.