ON WRIT OF CERTIORARI.

CHANDLER, Justice,
for the Court:
¶ 1. In these consolidated cases, thirty-two plaintiffs who signed delayed-deposit check agreements with Zippy Check Advance agreed that Zippy Check could pursue judicial remedies against them to collect the debt, while any and all of their claims would be relegated to arbitration. The circuit courts found the arbitration agreements to be unconscionable and denied Zippy Check’s motions to compel arbitration. The Court of Appeals affirmed as to one version of the agreement and reversed as to the other. We find that both versions of the arbitration agreement were so one-sided that they were substantively unconscionable and unenforceable. Therefore, we affirm in part and reverse in part the judgment of the Court of Appeals and affirm the judgments of the Circuit Court of Clarke County and the Circuit Court of Newton County.
*611 FACTS
¶ 2. In 2010, the plaintiffs initiated two lawsuits against Zippy Check, a check-cashing business, alleging fraudulent misrepresentation and predatory lending, inter alia. One suit was filed in the Circuit Court of Clarke County; the other was filed in the Circuit Court of Newton County. Each plaintiff had signed one of two versions of a delayed-deposit agreement with Zippy Check; each agreement contained different arbitration provisions. Zippy Check filed a motion to compel arbitration in each case.
¶ 3. Eight of the plaintiffs signed the older version of the delayed-deposit agreement. The front of this contract provided the amount financed, finance charge, annual percentage rate (described as “the cost of your fee as a yearly rate”), and the total owed. The reverse side of the contract consisted of several unnumbered paragraphs in fine print, including the following language:
Should you default under this Agreement, the Company may, at its option, exercise any one of the following remedies:
[[Image here]]
2. If payment is not made after a written demand, the Company may go to court and get a judgment against you for the then unpaid amount of your obligation to the Company. In the event judgment is entered in the Company’s favor, the Company may seek to collect this judgment through all judicial means necessary including attaching your nonexempt property, or garnishing your wages;
[[Image here]]
4. If this matter is placed with an attorney for collection of any and all monies due and owing the Company, all reasonable and necessary costs and expenses of collection, specifically including, but not limited to reasonable attorney fees and other damages as set forth by the court, shall be paid by you.
[[Image here]]
Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration administered by the American Arbitration Association (“AAA”) and judgment on the award rendered by the arbitrator(s) may be entered in any court having jurisdiction thereof.
The Company shall not be liable to you for any indirect, special or consequential damages arising out of or related to this contract, even if the Company has been advised of the possibility of such damages. In no event shall the Company’s liability, if any, exceed [t]he price paid by you for the services rendered hereunder. Where disclaimer, exclusion or limitation of liability for consequential or incidental damages is limited by law, our liability is limited to the greatest extent permitted by law.
Thus, the contract provided that Zippy Check could pursue “all” judicial remedies to collect on the debt, including attaching property and garnishing wages, as well as collecting “attorney fees and other damages as set forth by the court,” but the plaintiffs had to bring all of their claims to arbitration. Additionally, the contract limited Zippy Check’s liability to the “price paid by [the plaintiffs] for the services rendered.”
¶ 4. Twenty-four of the plaintiffs signed the “new” version of the contract. That contract provided:
ARBITRATION PROVISION: Any and all disputes or agreements between the parties arising out of this Agreement or any prior agreement between them (except the Lender’s rights to enforce the Borrower[’s] payment obligations in *612 the event of default by judicial or other process) shall be resolved, upon the election of you or us, by binding arbitration and in accordance with rules of the American Arbitration Association as presently published and existing. The parties agree to be bound by the decision of the arbitrator(s). The arbitration proceeding shall be a condition precedent to any court proceeding. Notwithstanding the applicability of any other law to any other provision of this Agreement, the Federal Arbitration Act, 9 U.S.C. Section 10 shall control the construction, interpretation, and application of the paragraph. Any issue as to whether the Agreement is subject to arbitration shall be determined by the arbitrator.
Like the old version of the contract, the new version allowed Zippy Check to pursue judicial remedies, while relegating any and all of the plaintiffs’ claims to arbitration.
¶ 5. Finding both arbitration provisions unconscionable, the Clarke County Circuit Court denied Zippy Check’s motion to compel arbitration. The Newton County Circuit Court adopted those findings and also denied arbitration. Zippy Check appealed the denial of arbitration in both cases, and the cases were consolidated on appeal. The Court of Appeals reversed as to the twenty-four plaintiffs who had signed the newer agreement. Caplin Enters., Inc. v. Arrington, 2011-CA-01332-COA, 145 So.3d 675, 684-86, 2013 WL 1878879, **8-9 (¶¶ 41-42) (Miss.Ct.App. May 7, 2013). However, the Court of Appeals affirmed the circuit courts’ denial of arbitration as to the eight plaintiffs who had signed the older agreement, finding that the arbitration provision in the older agreement was procedurally unconscionable. Id. at 683-84, 686-87, 2013 WL 1878879, at **7, 10 (¶¶ 29, 42). The Court of Appeals also found that both versions of the agreement amounted to contracts of adhesion. Id. at 682-83, 683-84, 2013 WL 1878879, at **6, 7 (¶¶ 27, 32). We granted Zippy Check’s petition for writ of certiora-ri.
DISCUSSION
¶ 6. We begin by addressing a procedural matter attendant to Zippy Check’s petition for certiorari. Zippy Check sought certiorari review of the decision of the Court of Appeals on the older version of the contract. Nonetheless, having granted certiorari, this Court may review the Court of Appeals decision on the new version of the contract as well. Mississippi Rule of Appellate Procedure 17 states that, by granting a petition for writ of certiorari, this Court may “review any decision of the Court of Appeals.” M.R.A.P. 17(a); see also M.R.A.P. 17(h) (“The Supreme Court’s review on the grant of cer-tiorari shall be conducted on the record and briefs previously filed in the Court of Appeals....”); Guice v. State, 952 So.2d 129, 133 (Miss.2007) (“[W]e have the authority to address all issues raised before the Court of Appeals and addressed by that court....”); Lester v. State, 744 So.2d 757, 758 (Miss.1999) (addressing as plain error a matter not raised in the certiorari petition). We proceed to review the entire decision of the Court of Appeals.
¶ 7. This Court applies de novo review to the grant or denial of a motion to compel arbitration. Sawyers v. Herrin-Gear Chevrolet Co., Inc., 26 So.3d 1026, 1034 (Miss.2010) (citing East Ford, Inc. v. Taylor, 826 So.2d 709, 713 (Miss.2002)). We have adopted the federal policy favoring arbitration, under which “any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.” Sawyers v. Herrin-Gear Chevrolet Co., Inc., 26 So.3d 1026,1034 (Miss.2010) (quoting Moses H. Cone Mem’l Hosp. v. Mercu *613 ry Constr. Corp., 460 U.S. 1, 24-25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983)).
¶ 8. We apply a two-pronged test to determine whether arbitration should be enforced under the Federal Arbitration Act. Rogers-Dabbs Chevrolet-Hummer, Inc. v. Blakeney, 950 So.2d 170, 173 (Miss.2007) (citing Taylor, 826 So.2d at 713). Under the first prong, we determine “whether the parties have agreed to arbitrate the dispute.” Blakeney, 950 So.2d at 173 (citing Taylor, 826 So.2d at 713). This prong has two aspects: “(1) whether there is a valid arbitration agreement and (2) whether the parties’ dispute is within the scope of the arbitration agreement.” Blakeney, 950 So.2d at 173 (citing Taylor, 826 So.2d at 713). If we determine that the parties did not agree to arbitrate the dispute at issue, the analysis is at an end. But if we conclude that the parties did agree to arbitrate, we will address the second prong, which is “whether legal constraints external to the parties’ agreement foreclosed arbitration of those claims.” Blakeney, 950 So.2d at 173 (quoting Taylor, 826 So.2d at 713).
I. Whether the parties agreed to arbitrate the dispute.
¶ 9. To determine if the arbitration agreement is valid, we apply contract law to analyze whether a valid contract exists between the parties. Adams Cmty. Care Ctr., LLC v. Reed, 37 So.3d 1155, 1158 (Miss.2010) (citing Grenada Living Ctr., LLC v. Coleman, 961 So.2d 33, 36-37 (Miss.2007)). “The elements of a contract are ‘(1) two or more contracting parties, (2) consideration, (3) an agreement that is sufficiently definite, (4) parties with legal capacity to make a contract, (5) mutual assent, and (6) no legal prohibition precluding contract formation.’ ” Reed, 37 So.3d at 1158 (quoting Coleman, 961 So.2d at 37). The plaintiffs focus on the alleged procedural and substantive unconscionability of the arbitration clauses; they do not argue that the contract itself was invalid. Each agreement involved two or more contracting parties; consideration consisted of a cash amount in exchange for Zippy Check’s cash-advance services; the agreement was sufficiently definite; and there was no legal prohibition precluding the contract. The parties have not presented any evidence that they lacked the legal capacity to contract or that mutual assent was lacking. Therefore, we find that each element of a contract is present.
¶ 10. Second, we must determine whether the disputed issue is within the scope of the arbitration agreement. Blakeney, 950 So.2d at 173 (citing Taylor, 826 So.2d at 713 (¶ 9)). The arbitration clause provided that “[a]ny controversy or claim arising out of or relating to” the contract shall be settled by arbitration. The plaintiffs alleged that Zippy Check engaged in predatory lending; made fraudulent misrepresentations concerning the terms of the transactions and in their collection attempts; breached the covenant of good faith and fair dealing; was negligent in handling the plaintiffs’ accounts; caused the plaintiffs to suffer emotional distress and mental anguish; and was negligent in hiring, training, and supervising employees. The plaintiffs’ claims against Zippy Check arise out of or relate to the Zippy Check delayed-deposit agreement, and the dispute is within the scope of the arbitration agreement. We find that the parties agreed to arbitrate the dispute.
II. Whether legal constraints external to the parties’ agreement foreclosed arbitration.
¶ 11. The second prong of the test for whether arbitration should be enforced is to determine “whether legal constraints external to the parties’ agreement *614 foreclosed arbitration of those claims.” Blakeney, 950 So.2d at 173 (citing Taylor, 826 So.2d at 713). Under the second prong, we consider whether “defenses available under state contract law such as fraud, duress, and unconscionability” may invalidate the arbitration agreement. Taylor, 826 So.2d at 713 (citing Doctor’s Assocs., Inc. v. Casarotto, 517 U.S. 681, 686, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996)). The only defense at issue is un-conscionability, which “has been defined as ‘an absence of meaningful choice on the part of one of the parties, together with contract terms [that] are unreasonably favorable to the other party.’ ” Taylor, 826 So.2d at 715 (quoting Entergy Miss., Inc. v. Burdette Gin Co., 726 So.2d 1202, 1207 (Miss.1998)).
¶ 12. Two strains of uncon-scionability are recognized — procedural and substantive. Taylor, 826 So.2d at 714. Procedural unconscionability can be shown by: (1) lack of knowledge; (2) lack of voluntariness; (3) inconspicuous print; (4) the use of complex, legalistic language; (5) disparity in sophistication or bargaining power of the parties; and/or (6) lack of opportunity to study the contract and inquire about the terms. MS Credit Ctr., Inc. v. Horton, 926 So.2d 167, 177 (Miss.2006) (quoting Taylor, 826 So.2d at 714). “Substantive unconscionability may be proven by showing the terms of the arbitration agreement to be oppressive.” Taylor, 826 So.2d at 714 (citing York v. Georgia-Pac. Corp., 585 F.Supp. 1265, 1278 (N.D.Miss.1984)).
¶ 13. Our analysis focuses on the substantive unconscionability of the arbitration agreements. A contract is substantively unconscionable if there is “an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party.” Entergy Miss., Inc. v. Burdette Gin Co., 726 So.2d 1202, 1207 (Miss.1998) (quoting Bank of Indiana, Nat’l Ass’n v. Holyfield, 476 F.Supp. 104, 109 (S.D.Miss.1979)). To determine whether a contract is substantively unconscionable, “we look within the four corners of an agreement in order to discover any abuses relating to the specific terms which violate the expectations of, or cause gross disparity between, the contracting parties.” Covenant Health & Rehab, of Picayune, LP v. Estate of Moulds ex rel. Braddock, 14 So.3d 695, 699 (Miss.2009) (quoting Vicksburg Partners, L.P. v. Stephens, 911 So.2d 507, 521 (Miss.2005) (overruled on other grounds)).
¶ 14. “Substantive unconsciona-bility is proven by oppressive contract terms such that ‘there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party’s nonperformance or breach.’ ” Estate of Moulds, 14 So.3d at 699-700 (quoting Holyfield, 476 F.Supp. at 110). It is not necessary that arbitration agreements contain “mutual promises that give the parties identical rights and obligations, or that the parties must be bound in the exact same manner.” 21 Williston on Contracts § 57:15 (4th ed.2013) (quoting Iwen v. U.S. West Direct, a Div. of U.S. West Mktg. Res. Group, Inc., 293 Mont. 512, 522, 977 P.2d 989, 996 (Mont.1999)). But “disparities in the rights of the contracting parties must not be so one-sided and unreasonably favorable to the drafter ... that the agreement becomes unconscionable and oppressive.” 21 Williston on Contracts § 57:15 (4th ed.2013) (quoting Iwen, 977 P.2d at 996). Under Mississippi Code Section 75-2-302, which has been applied to contracts other than for sale of goods, when a contract is found unconscionable, this Court “may refuse to enforce the contract, or it may enforce the remainder of the contract *615 without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.” Miss.Code Ann. § 75-2-302 (Rev.2002); Estate of Moulds, 14 So.3d at 700.
¶ 15. The contracts at issue, which Zippy Check drafted unilaterally and presented to its customers on a take-it-or-leave-it basis, were contracts of adhesion. A contract of adhesion has been described as one that is “drafted unilaterally by the dominant party and then presented on a ‘take-it-or-leave-it’ basis to the weaker party who has no real opportunity to bargain about its terms.” Taylor, 826 So.2d at 716 (quoting Holyfield, 476 F.Supp. at 108). These contracts “are usually prepared in printed form, and frequently at least some of their provisions are in extremely small print.” Taylor, 826 So.2d at 716 (quoting Holyfield, 476 F.Supp. at 108). Contracts of adhesion are not automatically unconscionable. Estate of Moulds, 14 So.3d at 701. Nonetheless, we have held that a finding that a contract is adhesive “makes an argument targeting a provision for a substantive un-conscionability review easier to prove.” Id.
¶ 16. This Court found a contract of adhesion to be substantively unconscionable in Pitts v. Watkins, 905 So.2d 553 (Miss.2005). Michael and Stephanie Pitts contracted with Charles Watkins to perform a home inspection on a residence the Pittses were interested in purchasing. Id. at 554. After Watkins performed the inspection, they purchased the home. Id. Soon after, the Pittses noticed problems with the home that should have been identified by the inspector and sued Watkins. Id. at 554-55. The trial court granted Watkins’s motion for summary judgment on the basis of an arbitration clause in the home-inspection contract. Id. at 554. The arbitration clause stated “Any dispute concerning the interpretation of this Agreement or arising from the Inspection and Report (unless based on payment of fee) shall be resolved by ... arbitration.” Id. at 556. The arbitration clause forced the Pittses to arbitrate their claims against Watkins, while permitting Watkins to sue the Pittses in court if they breached the contract by failing to pay the fee. Id. The contract also provided that if the Pittses breached the contract by failing to pay the fee, they would be responsible for administration costs, attorney’s fees, and the cost of litigation. Id. This Court found the arbitration clause, which allowed Watkins to pursue a breach by the Pittses in court while requiring the Pittses to arbitrate any breach by Watkins, to be “clearly one-sided, oppressive, and therefore, substantively unconscionable.” Id.
¶ 17. The Court also found the contract’s limitation-of-liability clause to be substantively unconscionable. Id. This clause limited Watkins’s liability to the amount paid for the inspection, $265. Id. We held that limitation-of-liability clauses are to be given strict scrutiny and will not be enforced “unless the limitation is fairly and honestly negotiated and understood by both parties.” Id. (quoting Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc., 857 So.2d 748, 754 (Miss.2003)). The Court quoted Lucier v. Williams, 366 NJ.Super. 485, 493, 841 A.2d 907, 912 (2004), which found a limitation-of-liability clause in a home-inspection contract to be unconscionable for these reasons:
(1) the contract, prepared by the home inspector, is one of adhesion; (2) the parties, one a consumer and the other a professional expert, have grossly unequal bargaining status, and (3) the substance of the provision eviscerates the contract and its fundamental purpose because the potential damages level is so *616 nominal that it has the practical effect of avoiding almost all responsibility for the professional’s negligence.
Pitts, 905 So.2d at 557. We concluded that the limitation-of-liability clause, which limited Watkins’s liability to $265 while leaving the Pittses with no redress for their claimed damages of $80,000 to $40,000, was substantively unconscionable. Id. at 556. The Court also found that the contract’s attempt to shorten the statute of limitations was unconscionable. Id. at 558. We held that arbitration clause and the limitation-of-liability clause, taken together, deprived the Pittses of a meaningful remedy. Id.
¶ 18. In Estate of Moulds, we applied Pitts to find an arbitration clause in a nursing-home-admission agreement to be substantively unconscionable. Estate of Moulds, 14 So.Bd at 703. The Court deemed the contract to be one of adhesion because it was a preprinted contract presented to the weaker party on a take-it-or-leave-it basis. Id. at 701. The arbitration clause required the patient and responsible party to submit any claims to a grievance procedure but allowed the nursing-home facility to pursue its claims in court. Id. at 702 n. 6. We deemed the clause unconscionable, noting that, in an earlier case, we had found that, under Pitts, this very clause was unconscionable because it was one-sided and oppressive. Id. at 703 (citing Covenant Health Rehab, of Picayune, LP v. Brown, 949 So.2d 732, 739-41 (Miss.2007) (overruled on other grounds)). In the earlier case, we also had relied on Pitts to find that a clause requiring the plaintiff to pay all costs of collection, including attorney’s fees and litigation costs, to be so one-sided and oppressive as to be unconscionable. Brown, 949 So.2d at 739.[1]
¶ 19. Applying this precedent, it is beyond question that the old version of the arbitration clause contained in the adhesive delayed-deposit check agreements was so one-sided as to be oppressive and substantively unconscionable. As in Pitts, the arbitration clause was oppressive because it forced the plaintiffs to arbitrate their claims, while permitting Zippy Check to pursue remedies for the plaintiffs’ breach in court. Additionally, the contract foisted upon the plaintiffs Zippy Check’s cost of hiring an attorney for collection, including “other damages” ordered by the court. A similar clause was found to be unconscionable in Pitts. That contract also attempted to limit Zippy Check’s liability to the finance charge each plaintiff had paid in exchange for the cash.[2] While not all the contracts are in the record, the ones included show finance charges ranging from $65.85 to $72. As in Pitts, Zippy Check’s *617 contractually-limited liability is “so nominal that it has the practical effect of avoiding almost all responsibility” for a breach by Zippy Check, and is unconscionable. The arbitration clause and the limitation-of-liability clause, taken together, effectively deny the plaintiffs an adequate remedy against Zippy Check. The arbitration clause is clearly oppressive and substantively unconscionable. And the arbitration clause in the new version of the contract, which permitted Zippy Check to pursue judicial remedies while relegating the plaintiffs’ claims to arbitration, is also clearly oppressive and substantively unconscionable pursuant to Pitts.
¶20. The plaintiffs obviously were so desperate for immediate funds that they signed agreements for relatively small amounts of cash for a fee that, if characterized as interest, would be usurious.[3] They simultaneously agreed that Zippy Check could institute judicial debt-collection proceedings against them in the event they defaulted on their payment obligations. The signers of the old version of the contract also agreed that they would pay Zippy Check’s attorney’s fees and other damages, and that Zippy Check’s liability would be limited to the finance charge. The preprinted contracts were offered on a take-it-or-leave-it basis and were contracts of adhesion. While an arbitration agreement need not contain identical obligations, under the particular facts of this case, the arbitration agreements were unreasonably favorable to Zippy Check, oppressive, unconscionable, and unenforceable. Therefore, we affirm in part and reverse in part the judgment of the Court of Appeals and affirm the judgments of the circuit courts.
¶ 21. THE JUDGMENT OF THE COURT OF APPEALS IS AFFIRMED IN PART AND REVERSED IN PART. THE JUDGMENTS OF THE CIRCUIT COURT OF CLARKE COUNTY AND THE CIRCUIT COURT OF NEWTON COUNTY ARE AFFIRMED.
WALLER, C.J., RANDOLPH, P.J., LAMAR, KITCHENS, PIERCE AND KING, JJ„ CONCUR. COLEMAN, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY DICKINSON, P.J.

. We note our holding in Sawyers v. Herrin-Gear Chevrolet Co., Inc., 26 So.3d 1026, 1035 (Miss.2010), that an arbitration clause was not unconscionable although it permitted a car dealership to sue for replevin or possession of the vehicle while relegating the vehicle purchaser's claims to arbitration. The Court held the contract provided "a limited exception to arbitration ... to obtain possession of the subject vehicle by replevin in the event of Sawyers’s default under the terms of the sales contract.” Id. The Court approved this limited exception because "there is collateral or a security interest at stake, because an arbitrator would not have authority to grant certain relief that only courts could give.” Id. Because this case does not involve a security interest, we find that Sawyers’s reasoning is distinguishable.

. We consider the limitation-of-liability and attorney’s fees-clauses because all clauses affecting dispute resolution are relevant to whether an arbitration agreement is substantively unconscionable. This Court in Pitts embraced this approach. Pitts, 905 So.2d at 557 (stating that "the limitation of liability clause, when paired with the arbitration clause, effectively denies the plaintiff of an adequate remedy and is further evidence of substantive unconscionability”).

. In 1997, this Court held that delayed-deposit check transactions charging more than eight percent interest per annum were loans that violated the civil usury statute. State v. Roderick, 704 So.2d 49, 53 (Miss.1997). In response, the Legislature enacted the Mississippi Check Cashers Act, providing that the fees charged are “service fees,” not interest. Miss.Code Ann. § 75-67-515(4) (Rev.2009).