KING, Justice,
dissenting:
¶ 31. The majority concludes that the arbitration provision is neither substantively nor procedurally unconscionable. Because I believe that the arbitration agreement is unreasonably one-sided and oppressive, I conclude that it is substantively unconscionable; therefore, I respectfully dissent.
¶ 32. Unconscionability is found when there exists an absence of meaningful choice for one party, together "with contract terms that are unreasonably favorable to the other party. Covenant Health & Rehab, of Picayune v. Estate of Moulds, 14 So.3d 695, 699 (Miss.2009) (quoting Cor-bin on Contracts § 29.4 (2009)). This Court has recognized two types of uncon-scionability: procedural and substantive. Id. “Substantive unconscionability may be proven by showing the terms of the arbitration agreement to be oppressive.” East Ford, Inc. v. Taylor, 826 So.2d 709, 714 (Miss.2002). Oppressive terms may be those in which a one-sided agreement exists, “whereby one party is deprived of all *611 the benefits of the agreement or left without a remedy for another party’s nonperformance or breach.” Moulds, 14 So.3d at 699-700 (quoting Bank of Indiana, Nat’l Ass’n. v. Holyfield, 476 F.Supp. 104, 110 (S.D.Miss.1979)). “One example of a one-sided agreement is one that allows one party to go to court, but restricts the other to arbitration.” Moulds, 14 So.3d at 700.
¶ 33. A contract of adhesion is a contract that the dominant party unilaterally drafted “and then presented on a ‘take-it- or-leave-it’ basis to the weaker party who has no real opportunity to bargain about its terms. Such contracts are usually prepared in printed form....” East Ford, 826 So.2d at 716 (quoting Holyfield, 476 F.Supp. at 110). However, a contract of adhesion is not automatically void due to unconscionability. East Ford, 826 So.2d at 716. An arbitration agreement within a contract of adhesion renders the arbitration “agreement ... unconscionable only where the stronger party’s terms are un-negotiable and ‘the weaker party is prevented by market factors, timing or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all.’ ” Id. at 716 (quoting Entergy Miss., Inc. v. Burdette Gin Co., 726 So.2d 1202, 1207 (Miss.1998)). The fact that the contract is a contract of adhesion makes substantive un-conscionability easier to prove, and can thus render a “facially oppressive term presumptively invalid.” Moulds, 14 So.3d at 701 (internal quotations omitted).
¶34. The contract at issue is unquestionably a contract of adhesion. It was a preprinted form drafted by a business, or presumably, by its lawyers, and was presented to Smith on a take-it-or-leave-it basis to sign if she wanted a job. Furthermore, unemployment rates were high, Smith’s testimony was that the highest level of education she completed was high school, and the evidence indicates that she is not a worker with any specialized skills. It is certainly reasonable to assume that a disparity in bargaining power exists between the parties, with Express Check holding the advantage. It is also reasonable to assume that market factors, i.e., difficulty finding another job, prevented Smith from contracting with another party or employer. See Entergy Miss., 726 So.2d at 1207 (where no evidence was put forth regarding the comparative business savvy of the contracting parties, “it is reasonable to assume that a large company such as Entergy holds the advantage in that respect”). While the trial court found that Smith “was not obligated to sign the contract as she could have refused and sought employment elsewhere,” this finding has utterly no basis in the record. While she could have ostensibly “sought employment elsewhere,” there is no evidence as to how difficult obtaining such employment might have been or how much such employment might have paid, as compared to Express Check. Such considerations are certainly relevant to a determination of unconscionability, and the trial court clearly did not consider them, but rather made an unsupported finding.[27]
¶ 35. In addition to being a contract of adhesion, the contract at issue allows Express Check to pursue judicial remedies in the form of injunctive relief for Smith’s breach of the contract and further mandates that she pay attorneys’ fees and costs if Express Check has to enforce any of the provisions of the agreement. Smith *612 is entirely relegated to arbitration for any and all breaches of the contract, and nothing provides that she may recover attorneys’ fees and costs for her attempts to enforce the contract. A similar provision was deemed substantively unconscionable in Pitts v. Watkins, 905 So.2d 553, 555-56 (Miss.2005). In that case, an inspection agreement allowed the inspector to go to court, but only to recover fee payment, while other claims were relegated to arbitration. Pitts, 905 So.2d at 556. It also allowed him to recover administration costs, attorneys’ fees, and costs of litigation, while the other party was relegated solely to arbitration for any breach of the contract. Id. The Court found that, because the arbitration provision allowed the inspector limited judicial remedies while relegating the other party entirely to arbitration, the arbitration clause was “clearly one-sided, oppressive, and therefore, substantively unconscionable.” Id.
¶ 36. Recently, in Caplin Enterprises, Inc. v. Arrington, this Court examined two different arbitration clauses found within delayed-deposit agreements drafted by Zippy Check, an “older” one and a “newer” one. Caplin Enterprises, Inc. v. Arrington, 145 So.3d 608 (Miss.2014). The “older” version “provided that Zippy Check could pursue ‘all’ judicial remedies to collect on the debt, including attaching property and garnishing wages, as well as collecting ‘attorney fees and other damages as set forth by the court,’ but the plaintiffs had to bring all of their claims to arbitration.” Id. at 611. The “newer” version “allowed Zippy Check to pursue judicial remedies [for default of payment obligations], while relegating any and all of the plaintiffs’ claims to arbitration.” Id. Thus, both arbitration provisions allowed Zippy Check to pursue judicial remedies for the limited issue of the borrower’s default and relegated all other disputes to arbitration. Id.
¶ 37. The Court found that both contracts at issue were contracts of adhesion, as “Zippy Check drafted [them] unilaterally and presented [them] to its customers on a take-it-or-leave-it basis.” Id. at 615. The Court deemed both the arbitration clauses unconscionable. Id. at 616-17. It determined that the “older” clause was “oppressive because it forced the plaintiffs to arbitrate their claims while permitting Zippy Check to pursue remedies for the plaintiffs’ breach in court. Additionally, the contract foisted upon the plaintiffs Zippy Check’s cost of hiring an attorney for collection, including ‘other damages’ ordered by the court.” Id. at 616. As to the “newer” arbitration provision that did not limit the borrower’s liability or provide that the borrower pay Zippy Check’s attorneys’ fees, but simply allowed Zippy Check to pursue judicial remedies for default while relegating all other disputes to arbitration, this Court found that it was “clearly oppressive and substantively unconscionable pursuant to Pitts.” Id. at 617. The Court noted how desperate the plaintiffs must have been for immediate funds, and that the preprinted contracts were offered on a take-it-or-leave-it basis and were contracts of adhesion, concluding that “[w]hile an arbitration agreement need not contain identical obligations, under the facts of this case, the arbitration agreements were unreasonably favorable to Zippy Check, oppressive, unconscionable, and unenforceable.” Id.
¶ 38. The arbitration provision at issue is one-sided and oppressive and is therefore substantively unconscionable, as it is even more one-sided than the “newer” arbitration agreement in Arrington,[28] It allows Express Check to use judicial reme *613 dies for virtually all of the breaches of the contract that Smith conceivably could accomplish, while also allowing Express Check to recover fees it may incur for any enforcement of contract provisions. Yet it restricts Smith to arbitration for all claims against Express Check and fails to provide that she may recover fees incurred while enforcing the agreement. It is reasonable to assume that Smith was so desperate for a job that she signed an .unreasonably unfavorable agreement to obtain much-needed employment. See id. at 617. Moreover, the contract at issue is clearly a contract of adhesion, rendering substantive unconscionability easier to prove. Under the facts of this case, the arbitration agreement was unreasonably favorable to Express Check and oppressive, and is thus unconscionable and unenforceable. I would therefore reverse the trial court’s order compelling arbitration and remand the case for further proceedings in the trial court.
WALLER, C.J., AND KITCHENS, J., JOIN THIS OPINION.

. For example, an educated and skilled professional with multiple high-paying job offers and comfortable savings may have the reasonable option of refusing to sign an arbitration agreement. It is obvious that an unskilled worker with no savings who desperately needs funds is unlikely to enjoy the same luxury.

. Consequently, seven justices on this Court found the arbitration provisions in Arrington *613 te be unconscionable, with only two justices dissenting. Likewise, the motion for rehearing in Arrington was denied by a vote of seven to two.