CHANDLER, Justice,
concurring in part and dissenting in part:
¶ 32. I respectfully dissent. Given that the contract formation was procedurally conscionable, I do not find that the facts of this case warrant a review of the substantive conscionability of the property-division provisions at the time of contract formation. At most, this Court should consider whether to isolate the spousal-support waiver and review it for conscionability at the time of divorce. Additionally, this Court treats contract conscionability as a question of law this Court can determine on appeal without remand. Caplin Enterprises, Inc. v. Arrington, 145 So.3d 608, 614 (Miss.2014). To promote judicial efficiency and preclude unnecessary rounds of appeals in the future, the majority should accept that task here and remand only if a determination of conscionability requires an alternate division of property and alimony than the lower court already has made.
¶ 33. While I do not believe that prenuptial agreements should be completely immune from substantive-unconscionability considerations, I also firmly believe that the doctrine of unconscionability under general contract law cannot apply to prenuptial agreements.[3] The decision to marry is not an arms-length commercial transaction, but rather is grounded in personal, moral, religious, and emotional considerations that are off-limits to strangers to the relationship. By imposing the contract doctrine of unconscionability on prenuptial agreements, the majority leaves our chancellors to forage in the dark, with no guidance as to many issues, for instance, whether a prospective marriage partner with children from a previous marriage may protect and provide for those children in a prenuptial agreement, without fear that a court will void the agreement as unconscionable and leave the children at the mercy of the former spouse.
¶ 34. This Court made very clear in Mabus that parties are free to bind themselves to property-division agreements that may be or may become one-sided. We stated in that case:
... the chancellor determined that Julie freely negotiated the agreement, and the chancery court would not relive [sic] her *440 of the obligation even if it was a bad bargain. The claim that the estates of the parties are so disparate that it questions fundamental fairness is of no consequence. An antenuptial agreement is as enforceable as any other contract in Mississippi. Smith, 656 So.2d at 1147. Of course, there must be fairness in the execution and full disclosure in an ante-nuptial agreement in Mississippi. Id. Both Julie and Ray signed a valid agreement. Had the tables been turned and Julie’s estate increased in value while Ray’s estate decreased in value from the time of the agreement, Julie would presumably want this Court to uphold the agreement to her benefit. The parties made this agreement to protect their assets. The fact that over time one party had the fortune of increasing their assets is not a reason to abolish or invalidate the agreement. At the time the agreement was made the parties wanted to protect premarital and inheritance assets, the agreement has done exactly what it was intended to do. All contracts involve some type of risk; this agreement was no different.
Mabus v. Mabus, 890 So.2d 806, 821 (Miss.2003) (emphasis added). In light of the whole Court’s agreement that this contract was procedurally conscionable, the reasoning above should control this Court today to uphold the property-division provisions of the contract.
¶ 35. However, I would acknowledge that a prenuptial contract can be conscionable in its property divisions but unconscionable in its alimony provisions. Permitting an isolated review of spousal-support provisions and waivers at the time of divorce is a good way to approach a contract that both is and is not like any other contract. Marriage is hardly your ordinary consideration. It is extremely difficult if not impossible to predict how life will require the responsibilities of a marriage to be divided regarding noneco-nomic contributions. Electing economic dependence for the purpose of furthering the goals of the marriage can prevent an individual from accumulating economic skills and. assets he or she otherwise would have secured over time. Public policy favors protecting individuals who place themselves in that position.
¶ 36. Permitting this bifurcated review of property division and spousal support would better enable attorneys to draft enforceable prenuptial contracts with confidence and would give chancellors more accessible tools for deciding challenges to such agreements. I disagree with the dissent that a substantive review of the property divisions of the contract is appropriate, given that the contract formation was procedurally conscionable. At most, this Court should conduct a limited review of the waiver of spousal support for fairness at the time of divorce.
¶ 37. I also disagree with the majority’s conclusion that the prenuptial agreement does not adequately provide that money kept in a joint account and used for familial purposes is covered by the prenuptial agreement.[4] One of the fundamental characteristics of contract law is that contracts are used to create an alternate controlling law to the default common law. The use of separate funds for marital purposes can result in a finding that the funds are marital property subject to division, absent an agreement to the contrary. See Johnson v. Johnson, 650 So.2d 1281 (Miss.1994); A & L, Inc. v. Grantham, 747 So.2d 832 (Miss.1999). Here, we have such an agreement. The agreement provides in part:
*441 ... any property hereafter acquired by each that shall be traceable to proceeds or appreciation from their separate property as set forth herein, shall for testamentary, intestate succession, and for their lifetimes and for any and all other purposes, be free from any claim of the other that may arise by reason of the contemplated marriage, notwithstanding any and all State latvs to the contrary....
I cannot agree with the majority that the common-law approach to marital use of property supersedes the contract. The opposite is true. The contract should control.
¶ 38. For all these reasons, I therefore respectfully dissent.
DICKINSON, P.J., JOINS THIS OPINION. RANDOLPH, P.J., JOINS THIS OPINION IN PART.

. In recognition that prenuptial contracts involve unique concerns, a growing majority of states have adopted some version of the Uniform Prenuptial Agreement Act.

. The creation of a joint banking account, while creating a right of withdrawal, does not automatically act to create an ownership interest. Smith v. Smith, 656 So.2d 1143, 1147 (Miss.1995).