# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CA-01282-COA

LOUISIANA EXTENDED CARE CENTERS, LLC, ADAMS COMMUNITY CARE CENTER, LLC  D/B/A ADAMS COUNTY NURSING CENTER, MAGNOLIA MANAGEMENT CORPORATION, MAGNOLIA ANCILLARY SERVICES, INC. AND COMMCARE MISSISSIPPI

APPELLANTS

v.

CAROLYN BINDON, INDIVIDUALLY AS ADMINISTRATOR OF THE ESTATE OF FRANK BINDON, AND ON BEHALF OF THE WRONGFUL DEATH BENEFICIARIES OF FRANK BINDON

APPELLEE

DATE OF JUDGMENT:                08/26/2014
TRIAL JUDGE:                     HON. LILLIE BLACKMON SANDERS
COURT FROM WHICH APPEALED:       ADAMS COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANTS:         JOSEPH SPENCER YOUNG JR.
ATTORNEY FOR APPELLEE:           EDWARD GIBSON
NATURE OF THE CASE:              CIVIL - WRONGFUL DEATH
TRIAL COURT DISPOSITION:         DENIED DEFENDANTS'/APPELLANTS' MOTION TO COMPEL ARBITRATION
DISPOSITION:                     REVERSED AND REMANDED – 12/01/2015
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE IRVING, P.J., MAXWELL AND FAIR, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1.     This appeal arises from the judgment of the Circuit Court of Adams County denying

a motion to compel arbitration filed by the Defendants/Appellants, Louisiana Extended Care

Centers LLC d/b/a Adams County Nursing Center; Adams County Community Care Center

LLC; Magnolia Management Corporation d/b/a/ Magnolia Ancillary Services Inc.; CommCare Mississippi; and John Does 1-20 (collectively, "nursing home" unless individual identification is necessitated). The nursing home raises the following issues: (1) whether a provision of an admission agreement is so one-sided and oppressive that it renders an incorporated arbitration clause unconscionable, invalid, and unenforceable; (2) whether the arbitration clause is invalid and unenforceable due to the lack of an arbitration forum; and (3) whether the arbitration clause is invalid and unenforceable because it fails to outline an alternative arbitrator-selection procedure.

¶2. Finding the arbitration clause valid and enforceable, we reverse and remand for further proceedings consistent with this opinion.

## FACTS

¶3. In February 2008, Frank Bindon was admitted to the Adams County Nursing Center (facility), and upon his admission, he and his wife, Carolyn, executed an admission agreement that contained an arbitration clause. On or around September 9, 2012, Frank died as a result of sepsis. Carolyn, as administrator of Frank's estate, filed a complaint against the nursing home, alleging negligence, gross negligence, and wrongful death. In response, the nursing home filed a motion to compel arbitration, and after a hearing, the circuit judge denied the motion. This appeal resulted.

## DISCUSSION

¶4. The standard of review for granting or denying a motion to compel arbitration is de

2

novo. *Harrison Cnty. Commercial Lot LLC v. H. Gordon Myrick Inc.*, 107 So. 3d 943, 949 (¶12) (Miss. 2013) (citation omitted). An appellate court "does not review the merits of the underlying claim." *Id*. at (¶13) (citation omitted).

### I.     *Unconscionability of section A(5)*

¶5.     At the hearing on the nursing home's motion to compel arbitration, Carolyn argued that the admission agreement was a contract of adhesion and that it was substantively unconscionable because, among other reasons, section A(5) of the admission agreement unilaterally allowed the nursing home to pursue litigation in collection cases. In denying the motion, the circuit judge stated:

> [In *Caplin Enterprises Inc. v. Arrington*, 145 So. 3d 608 (Miss. 2014), the Mississippi Supreme Court] said that [a] preprinted contract was offered on a take[-]it[-]or[-]leave[-]it basis. That's kind of what we've got here. You've got a whole agreement, [and] you've got arbitration in it, but if [a prospective patient] want[s] to get into the [the facility, he or she would have] to sign it all, which I think is unconscionable. I read the agreement, too, that said that you would be entitled to legal representation or you should consult an attorney. I doubt seriously that issue was offered even though it's not here[—]that that provision was offered.

¶6.     On appeal, the nursing home argues that the arbitration clause is valid and enforceable because (1) there is no legal prohibition against arbitration clauses in preadmission agreements between nursing-home facilities and their patients; and (2) section A(5) does not unilaterally permit the nursing home to seek judicial relief in collection cases. According to the nursing home, section A(5) merely gives it the right to collect attorney's fees and court costs in the event that a patient refuses to pay a delinquent debt, and the nursing home is

3

forced to seek a judgment compelling arbitration of a collection dispute. The nursing home insists that, unlike the arbitration clause in *Caplin*, the clause at issue in this case clearly states that the parties must submit all disputes, including claims for payment, nonpayment, or refunds, to binding arbitration. The nursing home also insists that unlike *Caplin*, this case does not involve a one-sided contractual limitation of liability. According to the nursing home, because this is not a collection case, whether section A(5) is unconscionable is an issue not yet ripe for review. The nursing home contends that despite any ambiguity caused by section A(5), the arbitration clause "is [nonetheless] replete with language that the nursing [home] is bound to resolve all collection disputes in binding arbitration."

¶7.     In the alternative, the nursing home argues that this Court is required to find that the specific language of the arbitration clause that forces the parties to arbitrate any dispute arising under the admission agreement controls over the general language found in section A(5). The nursing home further argues that mutuality of obligation is not a requirement of an enforceable agreement and that even if section A(5) is unconscionable, that does not invalidate the arbitration clause.

¶8.     In response, citing *Caplin* and *Covenant Health & Rehabilitation of Picayune LP v. Estate of Moulds*, 14 So. 3d 695 (Miss. 2009), Carolyn reiterates her argument that section A(5) is unconscionable and invalidates the arbitration clause. She also argues that the ambiguity of other provisions of the admission agreement renders the clause unenforceable.

¶9.     "The Mississippi Supreme Court has held that arbitration provisions within a nursing

home admission agreement fall within the scope of the Federal Arbitration Act [(FAA)]." *Cmty. Care Ctr. of Vicksburg LLC v. Mason*, 966 So. 2d 220, 225 (¶10) (Miss. Ct. App. 2007) (citation omitted). Under the FAA, in determining whether an arbitration clause is enforceable,

> [c]ourt[s] employ[] a two-part test: (1) whether the parties intended to arbitrate the dispute, and (2) whether legal constraints external to the parties' agreement foreclosed the arbitration of those claims. The first prong has two considerations: (1) whether there is a valid arbitration agreement, and (2) whether the parties' disputes fall within the scope of that agreement.

*H. Gordon Myrick*, 107 So. 3d at 949 (¶13) (internal citations and quotation marks omitted). Here, neither party argues lack of intent to arbitrate disputes arising under the admission agreement or that Carolyn's claims fall outside the scope of the arbitration clause. So we only discuss, under the second prong of the analysis, whether the alleged unconscionability of section A(5) constitutes a legal restraint external to the admission agreement that forecloses the arbitration of Carolyn's claims.

¶10. "Unconscionability has been defined as an absence of meaningful choice on the part of one of the parties, together with contract terms which are unreasonably favorable to the other party[.]" *Nw. Fin. Miss. Inc. v. McDonald*, 905 So. 2d 1187, 1193 (¶13) (Miss. 2005) (citation omitted). There are two forms of unconscionability: procedural and substantive.

¶11. Procedural unconscionability may be proved by showing a lack of knowledge, lack of voluntariness, inconspicuous print, the use of complex legalistic language, disparity in sophistication or bargaining power of the parties and/or a lack of opportunity to study the contract and inquire about the contract term.

*Mason*, 966 So. 2d at 229 (¶24) (internal citation and quotation marks omitted). Contracts

5

of adhesion presented on a take-it-or-leave-it basis can be procedurally unconscionable. But "[a]n arbitration agreement may not be labeled unconscionable simply because it carries with it aspects of adhesion[.]" *McDonald*, 905 So. 2d at 1194 (¶15) (citation omitted).

¶12. To determine whether an agreement is substantively unconscionable, a court must

> look within the four corners of an agreement in order to discover any abuses relating to the specific terms [that] violate the expectations of, or cause gross disparity between, the contracting parties. Substantive unconscionability is proven by oppressive contract terms such that there is a one-sided agreement whereby one party is deprived of all the benefits of the agreement or left without a remedy for another party's nonperformance or breach.

*Smith v. Express Check Advance of Miss. LLC*, 153 So. 3d 601, 607 (¶14) (Miss. 2014) (internal citations and quotation marks omitted).

¶13. Here, the admission agreement provides, in relevant part:

> [Section A(5):] Should an account become delinquent and be referred to an attorney and/or agency for collection, the Resident and/or Responsible Party agree to be responsible for paying all costs of collection if same are found liable for the delinquent amount by the appropriate tribunal. This includes, but is not limited to, attorney's fees and other costs of arbitration or litigation.

> ****

> In the event any party to this [a]greement is forced to incur legal expenses or costs because of the other party's refusal to comply with the arbitration provision, the other party shall be liable to the party which successfully enforces said arbitration provision for all legal costs, including attorneys['] fees and expenses, incurred in enforcing the provision.

> ****

> **THE UNDERSIGNED ACKNOWLEDGE THAT EACH OF THEM HAS READ AND UNDERSTANDS THIS AGREEMENT, INCLUDING THE ARBITRATION PROVISION, AND HAS RECEIVED A COPY OF**

6

**THIS AGREEMENT, AND THAT EACH OF THEM VOLUNTARILY CONSENTS TO AND ACCEPTS ALL OF ITS TERMS.**

(Emphasis in original).

¶14.   The arbitration clause provides, in pertinent part:

### E.   ARBITRATION - <u>PLEASE READ CAREFULLY</u>

\*\*\*\*

This agreement to arbitrate includes, but is not limited to, any claim for payment, nonpayment[,] or refund for services rendered to the Resident by the Facility.

\*\*\*\*

The parties understand and agree that by entering this [a]rbitration provision, which binds both the Facility and the Resident/Responsible Party, they are giving up and waiving their constitutional right to have any claim decided in a court of law before a judge and a jury.

\*\*\*\*

The Resident and/or Responsible Party understand that[:] (1) he/she has the right to seek legal counsel concerning this agreement[;] (2) the execution of this [a]rbitration [p]rovision is *not* a precondition to the furnishing of services to the Resident by the Facility[;] and (3) this [a]rbitration [p]rovision may be rescinded by written notice to the Facility from the Resident within [three] business days of signature.

\*\*\*\*

The [p]arties agree that, by executing this [a]greement, they will be bound to arbitrate any dispute or claim that is asserted at any time in the future regardless of when the occurrence, events[,] or incidents related to the claim occurred or transpired and regardless of whether the Resident still resides at the Facility.

The parties agree that the Resident and the Responsible Party have other

7

> choices with regard to the provision of long[-]term care to the Resident[,] and they enter into this [a]greement voluntarily. The parties acknowledge that this [a]greement involves interstate commerce and that this [a]rbitration [clause] shall be governed by and interpreted under the [FAA].

(Bold and underline in original; italics added).

¶15. As stated, procedural unconscionability is characterized by, among other things, a lack of knowledge or voluntariness, small print, or disparities in the bargaining power of the parties. Here, (1) section A(5) and the arbitration clause were typed in the same print as the remaining provisions of the admission agreement; (2) Frank and Carolyn were free to obtain advice of counsel before signing the agreement; (3) they acknowledged that the facility was not their only option for a healthcare provider for Frank; and (4) they agreed that their decision to have Frank admitted as a patient at the facility was a voluntary one. Therefore, Carolyn cannot now legitimately argue procedural unconscionability.

¶16. We have noted that Carolyn relies on *Caplin* and *Moulds* as support for her argument that section A(5) is unconscionable and invalidates the arbitration clause; so we discuss those cases here. In *Moulds*, before a nursing home admitted the appellee's mother as a patient, he and a representative of that nursing home executed an admission agreement that contained an arbitration clause. *Moulds*, 14 So. 3d at 700 (¶15). The nursing home later presented a second agreement to the appellee, and that agreement also contained an arbitration clause. *Id*. at (¶16). He denied signing the second agreement. *Id*. After his mother died, the appellee filed a complaint against the nursing home, and in response, the nursing home moved to compel arbitration. *Id*. at 698 (¶4). The trial judge denied the motion, and the

8

nursing home appealed. *Id*. On appeal, this Court reversed and remanded, and the Mississippi Supreme Court granted certiorari. *Id*.

¶17. In cases that preceded *Moulds*, our supreme court invalidated eight provisions of the admission agreement at issue in *Moulds*, and the nursing home conceded that the eight provisions invalidated by the supreme court and two additional provisions of the same admission agreement were unenforceable. *Id*. at 701-02 (¶20) (citation omitted). In another preceding case, this Court found several provisions of the same agreement unenforceable. *Id*. In *Moulds*, in addition to the previously invalidated provisions, our supreme court took issue with other provisions of the agreement, including Clauses A5 and C5, which allowed the nursing home to litigate disputes; and Clause E15, which required any dispute resolution or "legal proceedings" to be brought in the county where the nursing home was located. *Id*. at 703 (¶21). The supreme court concluded "that the arbitration clause[,] coupled with a multitude of unconscionable provisions, makes [the agreement] unconscionable as a whole." *Id*. at (¶25). Here, unlike in *Moulds*, there is not a "multitude" of unconscionable provisions that warrant invalidation of the arbitration clause. Instead, Carolyn attacks only one provision of the admission agreement, and the record does not establish that other provisions of the agreement are now or were ever at issue.

¶18. In *Caplin*, a consolidated case, the appellant, a check-cashing agency, appealed from circuit court judgments denying its motion to compel arbitration pursuant to arbitration clauses contained in two versions of an agreement signed by the check-cashing agency and

9

the thirty-two appellees. *Caplin*, 145 So. 3d at 610-11 (¶¶1-2). Eight of the appellees signed an older version of the agreement, a two-page, double-sided document. *Id*. at 611 (¶3). The reverse side of that document contained several indistinguishable paragraphs written in fine print, and one of those paragraphs set forth the arbitration clause. *Id.* The agreement provided, among other things, that upon default by the appellees: (1) the check-cashing agency could, after making a written demand for payment, "go to court[,] and get a judgment against [the appellees,] and seek to collect [the] judgment though all judicial means necessary"; and (2) after obtaining counsel for the purpose of collecting debts, require the appellees to pay all reasonable costs and expenses of collection (collectively, "litigation provisions"). *Id.* at (¶3). The arbitration clause stated:

> Any controversy or claim arising out of or relating to this contract, or the breach thereof, shall be settled by arbitration[.]
>
> The [c]ompany shall not be liable . . . for any indirect, special or consequential damages arising out of or related to th[e] contract, even if the [c]ompany has been advised of the possibility of such damages. In no event shall the [c]ompany's liability, if any, exceed the price paid . . . for the services rendered [under the contract]. Where disclaimer, exclusion[,] or limitation of liability for consequential or incidental damages is limited by law, [the company's] liability is limited to the greatest extent permitted by law.

*Id*.

¶19. Twenty-four of the appellees signed a newer version of the agreement that also contained the litigation provisions. *Id*. at 611-12 (¶4). It also contained an arbitration clause that stated: "Any and all disputes . . . between the parties arising out of th[e] [a]greement or any prior agreement between them . . . shall be resolved, upon the election of you or us, by

10

binding arbitration[.]" *Id*.

¶20.    On appeal, this Court found that both versions of the agreement were contracts of adhesion. *Caplin Enters. Inc. v. Arrington*, 145 So. 3d 675, 683 (¶¶26-27) (Miss. Ct. App. 2013). We also found that the arbitration clause in the older version of the agreement was procedurally unconscionable because it "contain[ed] no number or heading [and was] wedged in the midst of other non-distinguishable, non-labeled provisions on the back page of the agreement [and] typed in a much smaller font than the terms on the front of the page." *Id*. at (¶28). However, we concluded that the arbitration clause in the newer version of the agreement was not unconscionable because it was a

> more concise recitation of the parties' rights and obligations. It consist[ed] of only one side of a single page, with the financial charges and payment information listed at the top of the page. Th[e] transactional terms [were] followed by eight bolded headings, all of which [were] capitalized and set out in larger type than the bulk of the agreement's other text. The sixth of these bolded headings [was] labeled "**ARBITRATION PROVISION**[.]"
>
> ****
>
> The agreement also include[d] a separate italicized paragraph, which emphasize[d]: "By signing this agreement, you acknowledge that you have read, understand, and agree to all of [the] terms and conditions of the agreement, including the arbitration provision."

*Id*. at 684 (¶31). Thus, we affirmed as to the older version of the agreement and reversed and remanded as to the newer version. *Id*. at 686 (¶42).

¶21.    After granting certiorari, the Mississippi Supreme Court found that the agreements were contracts of adhesion "presented to [the appellees] on a take-it-or-leave-it basis."

11

*Caplin*, 145 So. 3d at 615 (¶15).  It also found that

> the [first] version of the arbitration clause contained in the adhesive . . . agreements was so one-sided as to be oppressive and substantively unconscionable . . . because it forced the [appellees] to arbitrate their claims, while permitting [the check-cashing agency] to pursue [judicial] remedies for the [appellees'] breach[.]  Additionally, the [agreement] foisted upon the [appellees the check-cashing agency's cost] of hiring an attorney for collection, including "other damages" ordered by the court. . . .  That contract also attempted to limit [the check-cashing agency's] liability to the finance charge each [appellee] had paid in exchange for the cash. . . .  The arbitration clause and the limitation-of-liability clause, taken together, effectively deny the [appellees] an adequate remedy against [the check-cashing company].

> ****

> And the arbitration clause in the [second] version of the [agreement], which permitted [the check-cashing agency] to pursue judicial remedies while relegating the [appellees'] claims to arbitration, is also clearly oppressive and substantively unconscionable.

*Id*. at 617 (¶19).  Thus, the supreme court affirmed this Court's judgment as to the older version of the agreement and reversed as to the newer version.  *Id*. at (¶20).

¶22.  The Mississippi Supreme Court decided *Smith* after it decided *Caplin*.  In *Smith*, the appellant, a previous employee of the appellee, signed a two-page agreement.  *Smith*, 153 So. 3d at 604 (¶2).  Section 6 of the agreement contained: (1) an injunctive-relief provision that gave the appellee the right to seek injunctive relief from a court of competent jurisdiction and to recover reasonable attorney's fees and costs from the appellant and (2) an arbitration clause that bound the parties to arbitrate any employment-related dispute, controversy, or claim. *Id*. After the appellee terminated the appellant's employment, she instituted litigation, and in response, the appellee moved to compel arbitration.  *Id*. at (¶1).  The  trial court

12

granted the motion, and an appeal ensued. *Id*.

¶23.    On appeal, in deciding whether the agreement was unconscionable, the Mississippi Supreme Court noted that "the doctrine of unconscionability traditionally has applied only to the most egregious of contractual situations." *Id*. at 607 (¶13). The supreme court found that the appellee's right to seek injunctive relief was a limited exception to the parties' agreement to arbitrate all disputes. The court concluded that

> th[e] section [that] provides that [the appellant] must pay reasonable attorneys' fees and costs incurred by [the appellee] . . . is found in the injunctive-relief section of the agreement. It is the third statement in a sentence which otherwise solely relates to injunctive relief. So a fair reading of the agreement leads to the conclusion that it applies to injunctive relief alone. And the provision does not absolutely entitle [the appellee] to [recover] attorneys' fees and costs. . . . The provision would be of no benefit to [the appellee] unless it prevailed in obtaining injunctive relief against Smith. So[] while the provision does favor [the appellee], [the supreme court] cannot say it is so one-sided as to be oppressive or unconscionable. Nor do[es the supreme court] find it substantively unconscionable.

*Id*. at 608 (¶¶19-20).

¶24.    In this case, like *Smith*, section A(5) is not a part of the arbitration clause. Instead, it is listed under the financial-agreement section of the admission agreement. Additionally, here, as noted, the arbitration clause states that (1) it encompasses "any legal dispute" between the parties; (2) claims involving "payment, nonpayment, or refund for services rendered" must be submitted to arbitration; and (3) the parties were required to arbitrate "any dispute or claim that is asserted at any time." Therefore, as in *Smith*, while section A(5) favors the nursing home, we do not find it to be so one-sided or oppressive that it renders the

13

arbitration clause unconscionable. This issue is without merit.

## II. *Unavailability of Forum*

¶25. The nursing home contends that the arbitration clause is enforceable because the arbitration forum is available. It avers that (1) the American Arbitration Association (AAA) is not the forum identified in the arbitration clause; and (2) because the AAA is not the selected forum, the absence of a post-dispute agreement (PDA) is of no consequence. According to the nursing home, the arbitration clause specifically provides that arbitration will be held pursuant to the AAA's procedural rules and that the AAA is not to be otherwise involved in the arbitration. In response, Carolyn argues that the arbitration clause is unenforceable because the selected forum, the AAA, is unavailable because the parties do not have a PDA.

¶26. The arbitration clause provides:

> It is understood and agreed by the Facility and Resident and/or Responsible Party that any legal dispute, controversy, demand[,] or claim . . . that arises out of or relates to the [a]dmission [a]greement, any service or health care provided by the Facility to the Resident or any matter related to the Resident's stay shall be resolved exclusively by binding arbitration pursuant to the [FAA], to be conducted at a place agreed upon by the parties, or in the absence of such agreement, at the Facility, in accordance with the procedural rules of the [AAA] under its Commercial Arbitration Rules[.] . . . The rules established by the [AAA] are referred to only to provide a procedural guideline for arbitrations held under this [a]greement. The [p]arties do not agree to use said service to conduct any arbitration; nor do they agree to use said service's arbitrators. Any of the [AAA's] Commercial Arbitration Rules which refer to the involvement of the AAA in the arbitration itself will not apply to an arbitration held under this [a]greement to the extent said rule calls for AAA involvement. The [p]arties may mutually agree to deviate from said rules of the [AAA] in whole or in part[.]

14

¶27. In *Moulds*, the Mississippi Supreme Court refused to enforce an arbitration clause that designated the AAA as the forum for a nursing-home dispute because the AAA refused to arbitrate disputes without a PDA. There was no PDA in that case, and our supreme court declined to order the trial court to choose a forum. *Moulds*, 14 So. 3d at 709 (¶45). However, in this case, the parties specifically agreed that arbitration would be held at a place mutually agreed upon by the parties or, in the alternative, at the facility. Although they agreed to conduct the arbitration pursuant to the procedural rules of the AAA, the parties limited the AAA's involvement by nullifying any AAA rule requiring the AAA's direct governance, and they even agreed upon a method for selecting a non-AAA arbitrator. Therefore, it is clear that the parties had no intention of selecting the AAA as their arbitration forum, and the record does not establish that the selected forum is unavailable. This issue is without merit.

### III. *Unavailability of Arbitrator*

¶28. The nursing home argues that the issue of the absence of an alterative arbitrator-selection provision is not yet ripe for review. It insists that in order to litigate this issue, Carolyn must first agree to arbitration and select an arbitrator. Alternatively, the nursing home argues that the FAA, specifically 9 U.S.C. § 5 (2015), provides a mechanism for settling arbitrator-selection disputes and that, if the parties cannot agree on an arbitrator, the circuit court may designate one. In response, Carolyn argues that the arbitration clause is unenforceable because (1) it does not provide a mechanism for selecting an arbitrator if the

parties cannot agree on one; and (2) it would be error for a court to select an arbitrator because such court involvement would defeat the purpose of an agreement to arbitrate claims.

¶29. The arbitration clause provides that any dispute between the parties will "be arbitrated by one impartial, unbiased arbitrator who is chosen by mutual agreement of the parties." Section 5 states:

> If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, such method shall be followed; but if no method be provided therein, or if a method be provided and any party thereto shall fail to avail himself of such method, or if for any other reason there shall be a lapse in the naming of an arbitrator or arbitrators or umpire, or in filling a vacancy, then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators or umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

¶30. In *BP Exploration Ltd. v. ExxonMobil Libya Ltd.*, 689 F.3d 481 (5th Cir. 2012), the Fifth Circuit Court of Appeals concluded that section 5 applies in three situations:

> (1) if the arbitration agreement does not provide a method for selecting arbitrators[,] (2) if the arbitration agreement provides a method for selecting arbitrators but any party to the agreement has failed to follow that method[,] or (3) if there is a lapse in the naming of an arbitrator or arbitrators.

*ExxonMobil*, 689 F.3d at 490-91 (internal citation and quotation marks omitted).

¶31. In this case, the record does not establish that any of the section 5 triggers have occurred. The arbitration clause provides a method for selecting an arbitrator, there has not been a lapse in the naming of an arbitrator, and the record does not conclusively establish

16

that, on remand, Carolyn will refuse to follow the method identified in the arbitration clause for selecting an arbitrator. We cannot speculate as to the course of action Carolyn will take once this case is back before the circuit court. This issue is without merit.

¶32. As stated, in this appeal, this Court is limited to deciding whether the arbitration clause is enforceable, and at this juncture, we conclude that the arbitration clause is valid with no legal constraints to its enforceability. We, therefore, reverse and remand this case for further proceedings consistent with this opinion.

¶33. **THE JUDGMENT OF THE ADAMS COUNTY CIRCUIT COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLEE.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, MAXWELL, FAIR, JAMES AND WILSON, JJ., CONCUR.**